[879 NE2d 1280, 849 NYS2d 461]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TEMEL GREENE, Appellant.

Argued October 18, 2007; decided November 20, 2007

**POINTS OF COUNSEL**

*Office of the Appellate Defender,* New York City (*Rosemary Herbert, Richard M. Greenberg* and *Jonathan Marvinny* of counsel), for appellant. I. Detective Elliott obtained information about Temel Greene in violation of Mr. Greene's physician-patient privilege, and where that privilege implicates a constitutionally-protected right, both the information obtained through the initial violation and the fruits of that violation must be suppressed. (*People v Figueroa,* 173 AD2d 156; *People v Petro,* 122 AD2d 309; *People v Sinski,* 88 NY2d 487; *Matter of Grand Jury Investigation of Onondaga County,* 59 NY2d 130; *Matter of Grand Jury Investigation in N.Y. County,* 98 NY2d 525; *Dillenbeck v Hess,* 73 NY2d 278; *People v Strawbridge,* 299 AD2d 584; *People v Patterson,* 78 NY2d 711; *People v Taylor,* 73 NY2d 683; *People v Gallina,* 66 NY2d 52.) II. The second photo array, the lineup and the identifying witness's in-court identification of Temel Greene must be suppressed where the second photo array was unduly suggestive, and where it therefore irreparably tainted the lineup and in-court identification. (*People v Chipp,* 75 NY2d 327; *People v Gilbert,* 295 AD2d 275; *Simmons v United States,* 390 US 377; *People v Malphurs,* 111 AD2d 266; *People v Hall,* 81 AD2d 644; *People v Tindal,* 69 AD2d 58.) III. The Appellate Division correctly concluded that the trial court's *Sandoval* ruling was erroneous where that ruling permitted inquiry into the locations and dates of Temel Greene's prior arrests; contrary to the Appellate Division's ruling, however, that error was not harmless. (*People v Sandoval,* 34 NY2d 371; *People v Coe,* 95 AD2d 685; *People v Arnold,* 298 AD2d 895; *People v Moore,* 238 AD2d 228; *People v Walston,* 99 AD2d 847; *People v Rivera,* 216 AD2d 221; *People v Grant,* 7 NY3d 421.)

*Robert T. Johnson, District Attorney,* Bronx (*Peter D. Coddington* and *Jessica Carmela Darpino* of counsel), for respondent. I.

Appellant's guilt was proven beyond a reasonable doubt by overwhelming evidence. II. The information obtained from Lincoln Hospital was not privileged and not subject to suppression because the physician-patient privilege is not of constitutional dimension. (*Wong Sun v United States,* 371 US 471; *People v Taylor,* 73 NY2d 683; *People v Patterson,* 78 NY2d 711; *Matter of Grand Jury Investigation in N.Y. County,* 98 NY2d 525; *Dillenbeck v Hess,* 73 NY2d 278; *Williams v Roosevelt Hosp.,* 66 NY2d 391; *Klein v Prudential Ins. Co. of Am.,* 221 NY 449; *People v Giordano,* 274 AD2d 748; *Goldin v Mejia,* 294 AD2d 231; *People v Hedges,* 98 AD2d 950.) III. Because the second photo array was not unduly suggestive, it did not taint Tony Coston's lineup or in-court identification. (*People v Jones,* 2 NY3d 235; *People v Gee,* 99 NY2d 158; *People v Rodriguez,* 64 NY2d 738; *People v Gilbert,* 295 AD2d 275; *People v Dunlap,* 9 AD3d 434; *People v Quinones,* 228 AD2d 796; *People v Daniels,* 202 AD2d 987; *People v Hall,* 81 AD2d 644; *People v Tindal,* 69 AD2d 58; *People v Malphurs,* 111 AD2d 266.) IV. The Appellate Division properly found that any *Sandoval* error that occurred at trial was harmless. (*People v Grant,* 7 NY3d 421.)

**OPINION OF THE COURT**

SMITH, J.

We hold that evidence obtained as a result of a violation of the physician-patient privilege need not be suppressed at a criminal trial.

## Facts and Procedural History

Anthony Berrios was shot to death on October 16, 2001. Detective Michael Elliott was assigned to investigate the homicide. Elliott learned from the victim's aunt that, according to talk on the street, the shooting was the result of a fight on October 13 in which a man had been slashed in the face.

Elliott went to a nearby hospital and asked an administrator "if anyone came in for a slashing to the face on that date." The administrator gave him defendant's name and address. With the help of a police computer, Elliott obtained defendant's arrest record and a photograph of him. A witness to the shooting identified the photograph; the trail thus begun led to more evidence against defendant, and eventually to his conviction for second degree manslaughter.

The main ground for defendant's appeal is the denial of his motion to suppress all evidence obtained as a result of the

hospital's disclosure of defendant's name and address to Elliott. Supreme Court held that evidence obtained in violation of the physician-patient privilege need not be suppressed. The Appellate Division affirmed on two alternative grounds: that there was no breach of the privilege, and that even if there was suppression was not required. A Judge of this Court granted leave to appeal, and we now affirm on the second of those two grounds.

## Discussion

CPLR 4504 (a) says: "Unless the patient waives the privilege, a person authorized to practice medicine . . . shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity." We have held that the privilege does not apply to "such ordinary incidents and facts as are plain to the observation of any one without expert or professional knowledge" (*Klein v Prudential Ins. Co. of Am.*, 221 NY 449, 453 [1917]). The People argue that the rule of *Klein* controls this case, because defendant's wound was visible to anyone who looked at him. Defendant argues that, while his wound may have been obvious, the cause of it was not; he says that laypeople cannot tell whether a wound is caused by a "slash" or some other kind of injury (*cf. Matter of Grand Jury Investigation in N.Y. County*, 98 NY2d 525, 531 [2002] [the privilege may turn on "whether particular injuries and their causes would have been obvious to a layperson"]).

We need not decide this issue, because we agree with both courts below that, even if there was a violation of the physician-patient privilege, the suppression of the evidence found as a result is not required. The physician-patient privilege is based on statute, not the State or Federal Constitution (*Klein*, 221 NY at 453). Our decisions make clear that a violation of a statute does not, without more, justify suppressing the evidence to which that violation leads (*People v Patterson*, 78 NY2d 711, 716-717 [1991]).

We have made an exception to this rule only when the principal purpose of a statute is to protect a constitutional right (*People v Taylor*, 73 NY2d 683, 690-691 [1989]; *People v Gallina*, 66 NY2d 52, 59 [1985]). The statute at issue in *Taylor* governed the procedure to be followed on an application by police officers for a search warrant; the statute in *Gallina* governed court-authorized wiretapping. In each case, while a violation of the

statute was not necessarily a violation of a constitutional right, the statutes existed to safeguard rights protected by the Fourth Amendment. In those cases, we held that when the statutes were violated, the evidence obtained as a result should be suppressed.

This case is nothing like *Taylor* or *Gallina*. There is no constitutional right to privacy in physician-patient communications. The Legislature has created, by statute, several exceptions to the physician-patient privilege (*see e.g.* Penal Law § 265.25 [doctors must report gunshot wounds and life-threatening knife wounds to the police]; Family Ct Act § 1046 [a] [vii] [physician-patient privilege inapplicable at hearings in child protective proceedings]). It could, if it chose, make another exception for the disclosure in this case.

Indeed, the argument for suppression here is weaker than the argument we rejected in *Patterson*, for the statute at issue in *Patterson*, which required return to a criminal defendant of his photograph after charges against him were dismissed, had at least some relation to a constitutionally protected right: the presumption of innocence (*see* 78 NY2d at 716). The physician-patient privilege, by contrast, does not serve primarily to protect individuals against government conduct; it regulates a private relationship. The primary obligation to comply with CPLR 4504 is the doctor's—or, in this case, the hospital's. To suppress evidence resulting from a violation of section 4504 would be to punish the State for a doctor's or hospital's misconduct—a punishment unlikely to deter doctors and hospitals, who have little interest in whether criminal prosecutions succeed or not.

Defendant's other arguments lack merit.

Accordingly, the order of the Appellate Division should be affirmed.

Chief Judge KAYE and Judges CIPARICK, GRAFFEO, READ, PIGOTT and JONES concur.

Order affirmed.