OPINION OF THE COURT
W. Brooks DeBow, J.
This claim alleges that claimant[1] is a young adult with disabilities who, on October 18, 2008 and prior thereto, was a resident of a group home in Brooklyn, New York that was owned and operated by the defendant. The claim alleges that claimant sustained injuries as a result of an assault by defendant’s employees, as well as various acts of negligence. This motion by claimants seeks an order compelling defendant to produce certain documents that have been withheld by defendant, and which defendant contends are “quality assurance” materials that are privileged pursuant to Education Law § 6527 and Mental Hygiene Law § 29.29 (see Bauer affirmation, exhibit A [privilege log]). Claimants contend that the New York State statutory privilege against disclosure of quality assurance documents as set forth in Education Law § 6527 and Mental Hygiene Law § 29.29 is superseded and preempted by certain provisions of the Federal Health Insurance Portability and Accountability Act (HIPAA) and its enabling regulations. Defendant opposes the motion.
Claimants seek production of 125 pages of documents from a “Quality Assurance” file that defendant has withheld on the ground that they are privileged pursuant to Education Law § 6527 and Mental Hygiene Law § 29.29, and which are described in defendant’s privilege log (see Bauer affirmation, exhibit A; Curtis affirmation in opposition, exhibit B). With the exception of one document described as a “Notifications Sheet,” all of the documents recited in the privilege log refer to an “incident,” “investigation,” or “interview.” Claimants have submitted an affirmation of Adam N. Raff, M.D., who has reviewed the privilege log, and who asserts that “information concerning incidents, meaning, events that occur in the course *239 of patient (or residential) care and treatment are health information because they relate to past, present or future physical or mental heal [sic] or the condition of an individual, or the provision of health care to the individual” (Raff affirmation 1Í 7). Dr. Raff describes why such information would be relevant to medical treatment and asserts that the documents, as described in the privilege log, “include medical information that should properly be a part of [claimant’s] clinical record” (id. 1Í 6). In opposition to the motion, defendant has submitted the affidavit of Megan O’Connor-Hebert, Deputy Commissioner, Division of Quality Improvement for the New York State Office of People with Developmental Disabilities (OPWDD), in which she generally describes OPWDD’s quality assurance programs. The O’Connor-Hebert affidavit categorizes the documents that are recited in the privilege log, and states by whom each document was prepared and the purpose for which it was prepared (O’Connor-Hebert aff ¶¶ 17-21).
In pertinent part, the Education Law excludes from discovery in civil litigation “the records relating to performance of a medical or a quality assurance review function . . . including the investigation of an incident reported pursuant to section 29.29 of the mental hygiene law” (Education Law § 6527 [3]). The purpose of this quality assurance privilege is “to promote the quality of care through self-review without fear of legal reprisal . . . [and] to [enable institutions to] ameliorate the causes of untoward incidents through unfettered investigation” (Katherine F. v State of New York, 94 NY2d 200, 205 [1999] [citations and internal quotation marks omitted]). Documents such as investigation reports and incident reports prepared by OPWDD as part of a quality assurance function are exempt from disclosure pursuant to Education Law § 6527 (3) (see id. at 205-206; see generally Mental Hygiene Law § 29.29; 14 NYCRR part 624). Juxtaposed against this privilege asserted by defendant is the right of access claimed by claimant to his own health care information and, more specifically, health information that is maintained in a “designated record set” within the meaning of the Federal HIPAA and its implementing regulations (see 45 CFR 164.524 [a]).
At the threshold, the court has reviewed the documents that defendant has withheld and has submitted for in camera review, as set forth in paragraphs 7 through 46 of the privilege log, and *240 finds that each of those documents falls within the protective ambit of Education Law § 6527 (3).[2]
Claimants’ argument that Education Law § 6527 (3) is preempted by HIPAA relies exclusively upon Matter of Miguel M. (Barron) (17 NY3d 37 [2011]), which is manifestly distinguishable, and far too narrow a holding to warrant such reliance under the facts of this claim. In Matter of Miguel M., petitioner Miguel’s hospital records were obtained by respondent Dr. Barron pursuant to Mental Hygiene Law § 33.13 (c) (12), and Miguel objected when those records were offered into evidence at a hearing on a petition for a court order directing that Miguel be given involuntary assisted outpatient treatment (AOT) for mental health issues. Miguel was not given notice that Dr. Barron had requested his hospital records, nor did Miguel authorize the disclosure of the records to Dr. Barron. Miguel asserted — and the Court of Appeals agreed — that the disclosure of a patient’s medical records pursuant to Mental Hygiene Law § 33.13 for the purpose of an AOT proceeding was preempted by that part of HIPAA known as the “Privacy Rule,” which “prohibits disclosure of an identifiable patient’s health information without the patient’s authorization, subject to certain exceptions (45 CFR 164.508 [a] [1])” (Matter of Miguel M. at 42). The Privacy Rule expressly preempts contrary state disclosure laws unless they offer greater privacy protection than federal law (see id.). The Court found that Dr. Barron’s reliance on two exceptions to the Privacy Rule — the “public health” and “treatment” exceptions — was grounded on Dr. Barron’s literalistic and strained interpretations of those exceptions (id. at 42-43). The Court noted that the Privacy Rule would have allowed disclosure of the contested hospital records if Dr. Barron had followed procedures attendant to certain exceptions to the Privacy Rule that would have provided Miguel with notice of the disclosure of his health information (id. at 43-44). The Court narrowly held that the unauthorized disclosure of Miguel’s medical records without notice to him was inconsistent with, and therefore preempted by, HIPAA and the Privacy Rule (id. at 44).
In contrast to Matter of Miguel M., claimants here are not seeking to shield claimant’s medical records from disclosure to a *241 third party, and they are not relying upon HIPAA’s Privacy Rule. Rather, they seek access to information about claimant that is contained in records of the investigation of the incident in which he was injured. Claimants contend that the documents recited in the privilege log contain information about claimant (see Bauer affirmation H 9), and thus, it is protected health information to which HIPAA grants access to claimant (see id. HH 5, 6). More specifically, claimants assert by way of the Raff affirmation that information that should be found in the documents that are recited in the privilege log relates to the past, present or future health or condition of claimant, and that it should therefore be part of his clinical record, and thus they contend that it is accessible to them because it is part of the “designated record set” pursuant to 45 CFR 164.524 (a). Defendant argues that the records at issue were not used to make treatment decisions about residents, and that they are therefore not part of the designated record set (see Curtis affirmation HIT 20-21).[3]
The term “designated record set” is defined as:
“(1) A group of records maintained by or for a covered entity that is:
“(i) The medical records and billing records about individuals maintained by or for a covered health care provider;
“(ii) The enrollment, payment, claims adjudication, and case or medical management record systems maintained by or for a health plan; or
“(iii) Used, in whole or in part, by or for the covered entity to make decisions about individuals.” (45 CFR 164.501.)
This definition is intended to provide individuals with “a right to access any protected health information that may be used to *242 make decisions about them” (65 Fed Reg 82462, 82605 [2000]). The definition, however, does not “provide access to all individually identifiable health information” (id. at 82606). Rather, “individuals have a right of access to any protected health information that is used, in whole or in part, to make decisions about individuals” (id. at 82554). However, “information systems that are used for quality control or peer review analyses may not be used to make decisions about individuals. In that case, the information systems would not fall within the definition of designated record set” (id. [emphasis added]). The fact that documents were generated during the investigation of an incident involving claimant, and thus necessarily include information about claimant and his injuries, does not cause those investigatory records to become protected health information that is part of the designated record set. Indeed, the commentary to the definition of the designated record set considers the possibility that information about an individual may be found in quality assurance documents and might be sought in civil litigation, and that in such circumstance “the rules of the relevant court determine such access” (id. at 82607). Thus, claimants have not demonstrated that the provisions of HIPAA generally preempt the provisions of Education Law § 6527 (3).[4]
In reply to defendant’s opposition to the motion, claimants argue that claimant’s right of access under HIPAA should be maintained in this case, i.e., that the records at issue are or should be part of claimant’s designated record set. This contention rests upon the commentary to the definition of the designated record set, which states that a hospital’s peer review files (or quality assurance documents) are not part of the designated record set because they “are used only to improve patient care at the hospital, and not to make decisions about individuals” (65 Fed Reg 82462, 82606 [emphasis added]). Indeed, defendant acknowledges that “[a] quality assurance record may be subject to disclosure if it is used to make treatment decisions about individuals” (Curtis affirmation 11 21); however, it submits the affidavit of O ’ Connor-Hebert, in which she affirms that all of the documents that are recited in the privilege *243 log “are not maintained in a resident’s clinical record, are not disseminated to a resident’s health care providers, and are not used to communicate with health care providers about the resident’s care and treatment” (O’Connor-Hebert aff 1iH 17-21).[5]
However, claimants cite O’Connor-Hebert’s statement that the Incident Review Committee, following its comprehensive review of the incident, “determine[s] how to prevent recurrence at the individual and systemic level” (id. 1f 20 [emphasis added]). Defendant’s privilege log states that a memorandum entitled “Investigation” and its addendum were addressed to Donna Limiti (see Bauer affirmation, exhibit A, 1Í1Í17, 18, 26), and claimants assert that Ms. Limiti made certain residential placement decisions and addressed other issues about claimant after the incident that is the subject of this claim (see generally Marabello aff). Claimants do not complete the argument, but appear to be contending that since certain quality assurance documents were addressed to Ms. Limiti, and since she made decisions about claimant, those documents were used to make decisions about claimant and, therefore, they must be part of the designated record set. This argument is unpersuasive.
Claimants’ reading of the above-quoted comment from 65 Fed Reg 82462, 82606 is strained when considered within the context of the purposes of those provisions of HIPAA that authorize a patient’s access to his or her protected health information, which are intended to “facilitate [ ] an open and cooperative relationship between individuals and covered health care providers and health plans and allows individuals fair opportunities to know what health information may be used to make decisions about them” (65 Fed Reg 82462, 82605-82606). As discussed above, those provisions do not necessarily provide an individual unfettered access to all information about them that may be found in incident reports and other quality assurance documents. As defendant candidly acknowledges, the designated record set may include quality assurance information that was relied upon to make individualized decisions. However, as noted above, defendant’s submission establishes that the documents sought in this case are not the type that are used to make deci *244 sions about claimant’s treatment or care (see O’Connor-Hebert aff 1Í1Í17-21), and nothing in claimants’ submission demonstrates otherwise. To be sure, claimants raise the spectre that certain documents may have been used in claimant’s placement, inasmuch as they correctly note that Ms. Limiti received investigatory memoranda, and they establish that Ms. Limiti was involved in decision-making about claimant’s placement. However, there is nothing before the court to enable it to conclude that any of Ms. Limiti’s placement decisions were made after the dates of the memoranda that were addressed to her and dated November 14, 2008 and February 14, 2009, or that any decisions about claimant’s placement were made with reference to those memoranda, and claimants do not argue or state otherwise. Further, the mere fact that the Incident Review Committee determines how to prevent recurrences at an “individual” level does not demonstrate ipso facto that the quality assurance documents were utilized to make decisions about claimant’s placement or care. Finally, Dr. Raffs contention in his first affirmation that the withheld documents “should properly be a part of [claimant’s] clinical record” (Raff affirmation, Oct. 19, 2012, H 6 [emphasis added]) is unpersuasive. Regardless of whether the information that is contained within the withheld documents should be part of a clinical record, the pertinent inquiry is whether the quality assurance documents were used for a clinical purpose. Also unpersuasive is the contention set forth in Dr. Raffs second affirmation that the incident reports are “clinically relevant” to allow professional staff to make fully informed decisions about this nonverbal claimant does not transform the quality assurance documents into a designated record set, particularly in the notable absence of any proof that such clinically relevant information relating to the incident is, in fact, not in his clinical records.
Finally, the fact that claimants’ counsel and their expert physician may have been given access to incident reports or quality assurance documents in other cases does not support claimants’ argument that Education Law § 6527 (3) is preempted by HIPAA. The cases cited by claimants do not suggest otherwise, as the state statutory privilege was inapplicable in the federal litigation (see Oakley v Federation Empl. & Guidance Servs., Inc., 2011 WL 2119741, *6, 2011 US Dist LEXIS 57637, *17-19 [SD NY, May 23, 2011, No. 10 Civ. 7739(JSR)]) or preemption of the Education Law § 6527 (3) privilege was not an issue in the case (see Cosentino v New York Off. of Mental *245 Retardation & Dev. Disabilities, 354 Fed Appx 466 [2d Cir 2009]; Young v State of New York Off. of Mental Retardation & Dev. Disabilities, 649 F Supp 2d 282 [SD NY 2009]).
In sum, the records that have been withheld by defendant and recited in its privilege log are quality assurance documents that are privileged from disclosure by Education Law § 6527 (3), the privilege for quality assurance documents that is set forth in Education Law § 6527 (3) is not preempted by HIPAA as a matter of law, and the investigative reports in this claim are not part of claimant’s designated record set. Accordingly, it is ordered, that claimant’s motion number M-82405 is denied.

. The claim names Nicholas Marabello, by and through his parent and guardian, Rozanna Marabello, and Rozanna Marabello, individually, as claimants. Unless otherwise stated, the term “claimant” shall refer to Nicholas Marabello.

. The court notes that page 178 of defendant’s in camera submission, which appears to be a photocopy of a number of small photographs, is not addressed in the privilege log as having been previously disclosed or withheld, and thus, defendant is directed to cure that omission.

. Defendant does not argue that the quality assurance records are expressly exempt from preemption by HIPAA by 45 CFR 160.203 (c), which provides that
“[a] standard, requirement, or implementation specification adopted under this subchapter that is contrary to a provision of State law preempts the provision of State law . . . except if. . .
“[t]he provision of State law, including State procedures established under such law, as applicable, provides for the reporting of disease or injury” (emphasis added).
This court’s consideration of the preemption argument will be limited to the narrow issue set forth by the parties, that is, whether the records at issue in this claim are part of the “designated record set.”

. It is noteworthy that HIPAA’s implementing regulations not only define an individual’s right to access to his or her protected health information, but specifically provide procedures for requesting access and seeking review of denials of access (see generally 45 CFR 164.524 [b], [d]). Accordingly, the records claimant seeks — if part of the designated record set — would be directly available to him through administrative process under HIPAA, and thus, unlike Miguel, he would not need to argue that HIPAA preempts state law limiting production of documents in civil litigation.

. To the extent that claimants argue that the competing submissions of Dr. Raff and Ms. O’Connor-Hebert raise issues of fact that preclude determination of this motion as a matter of law (see Bauer affirmation, Dec. 3, 2012, H 12), claimants offer no authority, and the court finds none, in support of the implied proposition that the court must conduct a fact-finding hearing or trial to decide whether certain documents are protected by the statutory “quality assurance” privilege.