[43 NYS3d 534]

In the Matter of Lucas QQ. Mahfuzur Rahman, as Acting Clinical Director of the Greater Binghamton Health Center, Respondent; Lucas QQ., Appellant.

Third Department, November 23, 2016

**APPEARANCES OF COUNSEL**

*Sheila E. Shea, Mental Hygiene Legal Service*, Albany (*Cailin C. Brennan* of counsel), for appellant.

*Eric T. Schneiderman, Attorney General*, Albany (*Kathleen M. Treasure* of counsel), for respondent.

## OPINION OF THE COURT

LYNCH, J.

Appeal from an order of the Supreme Court (Guy, J.), entered November 12, 2015 in Broome County, which granted petitioner's application, in a proceeding pursuant to Mental Hygiene Law article 33, to authorize petitioner to administer antipsychotic and other medications to respondent.

On October 1, 2015, respondent, a 24-year-old graduate student, was involuntarily admitted to the Greater Binghamton Health Center (hereinafter GBHC), a psychiatric hospital operated by the Office of Mental Health (hereinafter OMH) (*see* Mental Hygiene Law §§ 7.17, 9.37). Respondent had not previously been treated for a mental illness on either an inpatient or outpatient basis. Respondent's treating psychiatrist at GBHC, Bernardo Izaguirre, diagnosed him with "[u]nspecified schizophrenia spectrum disorder" and prescribed a course of antipsychotic and other medications, which respondent refused to take. As a result, petitioner, GBHC's acting clinical director, commenced this proceeding pursuant to Mental Hygiene Law article 33 on October 29, 2015, seeking an order permitting involuntary treatment. The petition was supported by the affidavit of Izaguirre and a reviewing psychiatrist, Xiaoying Chang.

A hearing was held on November 2, 2015, in which respondent declined the representation offered by counsel from Mental Hygiene Legal Service and opted to represent himself. Only Izaguirre and respondent testified. We take note that during respondent's cross-examination of Izaguirre, as well as respondent's direct testimony, respondent exhibited a coherent understanding in challenging the medication treatment plan as overbroad. At the close of proof, Supreme Court granted the petition. Three days later, the court issued an order that authorized petitioner, and any facility to which respondent might be transferred, to administer an extensive list of medications and to obtain respondent's past psychiatric and medical records as needed to facilitate his treatment. Respondent was discharged from GBCH on December 21, 2015, shortly after filing a notice of appeal.

■ The threshold question is whether the appeal has been rendered moot given respondent's release and the expiration of

the challenged order. We do agree with petitioner that the order expired by its terms upon respondent's discharge from GBHC. The exception to the mootness doctrine applies where an issue (1) could readily recur, (2) will typically evade review, (3) is of public importance and (4) represents a substantial and novel issue yet to be decided by this Court (*see Matter of Bezio v Dorsey*, 91 AD3d 1051, 1052 [2012], *affd* 21 NY3d 93 [2013]). As pointed out in respondent's brief, there were 322 applications for authorization to forcibly treat patients who are within the Third Department during 2014—a contention that adequately demonstrates that proceedings of this nature will readily recur. Since the duration of these orders is tied into the treatment of the patient, who may, as here, be discharged before an appeal is even perfected, we agree that these proceedings do typically evade review (*compare Matter of Anonymous v New York City Health & Hosps. Corp.*, 70 NY2d 972, 974 [1988] [involuntary commitment litigation does not inherently and typically evade appellate review]). And, certainly, the proceeding is of public importance because it implicates a patient's "fundamental liberty interest to reject antipsychotic medication" (*Rivers v Katz*, 67 NY2d 485, 495 [1986]).

As to whether a substantial and novel issue has been presented, we fully recognize that the governing standard has been in place since the Court of Appeals decision in *Rivers v Katz* (67 NY2d at 497-498). The state is authorized to administer medication against a patient's wishes when it establishes by clear and convincing evidence that the patient lacks "the capacity to make a reasoned decision with respect to proposed treatment," and "the proposed treatment is narrowly tailored to give substantive effect to the patient's liberty interest, taking into consideration all relevant circumstances, including the patient's best interests, the benefits to be gained from the treatment, the adverse side effects associated with the treatment and any less intrusive alternative treatments" (*id.* at 497). Whether a patient lacks such capacity presents a question of fact for the trial court to address (*see Matter of Jay S. [Barber]*, 118 AD3d 803, 804 [2014]; *Matter of Joseph O.*, 245 AD2d 856, 856 [1997]). What we find significant and novel here is how that standard is to be met by a petitioner and applied by the trial court with respect to the formulation of a medication treatment plan, and, for that reason, we will address the merits of the appeal (*see Mental Hygiene Legal Servs. v Ford*, 92 NY2d 500, 505-506 [1998]; *Matter of Anthony H. [Karpati]*, 82 AD3d 1240, 1241 [2011], *lv denied* 17 NY3d 708 [2011]).

■ The fundamental flaw established by this record is that the scope of medications authorized by Supreme Court was overbroad—a flaw conceded by petitioner. The order actually authorized the use of 28 various medications, including medications for symptoms and illnesses that respondent did not have. Notably, petitioner acknowledges that the order was inconsistent with OMH policy. During the pendency of this appeal, OMH even issued a directive to the clinical directors of all OMH facilities stating that OMH policy only allows for the administration of medications and treatment necessary to treat a patient's current diagnosis and conditions. As important as that directive is administratively, it does not fully resolve the court's responsibilities in applying the *Rivers* standard. The operative point here is that the court's order must be narrowly tailored so as to only authorize treatment tied into the patient's actual diagnosis and condition as defined by clear and convincing evidence in the record.

This point implicates the secondary problem presented in that Supreme Court failed to make specific findings on the record as to respondent's capacity and the viability of the treatment plan. Instead, the court stated that it was granting the petition "based on what . . . Izaguirre has testified to." The clear and convincing standard that governs these types of proceedings demands more. For his part, Izaguirre did not explain the basis for the medications listed in his treatment proposal. To the contrary, he testified that only one medication, Risperdal, had been recommended at that point. Moreover, the court cannot, as it did here, rely on testimony from other cases that the provider will "request some flexibility" in formulating a treatment plan. The problem is further compounded by the fact that Izaguirre testified that respondent lacked insight into his mental illness and had poor judgment for refusing to take the medications listed on what was indisputably an overbroad treatment plan. Given the pervasive flaw in the medication treatment plan, we agree with respondent that petitioner failed to meet its burden of proof in this case.

■ There are two additional components of the final order that warrant comment. Despite the fact that petitioner made no request for such relief and that respondent was given no advance notice, Supreme Court authorized GBHC to "obtain any of [respondent's] past psychiatric/medical records" and authorized the treatment at "any other medical/psychiatric facility [respondent's] care may require"—an authorization the

parties refer to as a "traveling" order. As for the records, we recognize that OMH facilities are authorized to secure clinical records that are needed to treat a patient from any OMH or federal facility (*see* Mental Hygiene Law §§ 5.01, 33.13 [c] [12]; [d]; *see also* 45 CFR 164.506). That said, respondent was clearly entitled to advance notice under the Health Insurance Portability and Accountability Act of any request or directive to release his medical records (*see Matter of Miguel M. [Barron]*, 17 NY3d 37, 43-44 [2011]). Given that respondent's fundamental liberty interest is directly implicated, we reach the same conclusion that notice is required in advance of any traveling order.

McCARTHY, J.P., GARRY, DEVINE and CLARK, JJ., concur.

Ordered that the order is reversed, on the law, without costs, and petition dismissed.