People v Torres (2025 NY Slip Op 51556(U))

[*1]

People v Torres

2025 NY Slip Op 51556(U) [87 Misc 3d 1213(A)]

Decided on September 30, 2025

Criminal Court Of The City Of New York, Kings County

Whitehair, J.

Published by New York State Law Reporting
Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be
published in the printed Official Reports.

Decided on September 30, 2025
Criminal Court of the City of New York, Kings County

The People of
the State of New York

against
Gilberto Torres, Defendant

Docket No. CR-040846-24KN

For the Defendant:
The Legal Aid Society (Nora Wallace of
counsel)
For the People:
Eric Gonzalez, District Attorney, Kings
County (Thalilaa Charles of counsel)

Christopher E. Whitehair, J.

MOTION FOR LEAVE TO
REARGUE
Following adjudication of a suppression hearing
conducted on July 28, 2025, and July 29, 2025, Defendant sought leave to reargue a
portion of this Court's decision denying suppression of the blood test results obtained as
evidence in this case. Specifically, Defendant argues that this Court's ruling was in error
since the People did not elicit evidence regarding the credentials of the hospital staffer
who withdrew Defendant's blood, thus adherence to the provisions of Vehicle and
Traffic Law ("VTL") § 1194 (4) was not established, and suppression is
mandated.
The determination of whether to grant leave for a motion to reargue pursuant to
CPLR 2221 is left to the sound discretion of the court and "is designed to afford a party
an opportunity to establish that the court overlooked or misapprehended the relevant
facts, or misapplied any controlling principle of law," but it shall not include any matters
of fact or theories of law not offered on the prior motion (CPLR 2221 [d] [2]; Pryor v Commonwealth Title Ins.
Co., 17 AD3d 434, 435-436 [2d Dept 2005]). CPLR 2221 is not designed to
afford the unsuccessful party successive opportunities to reargue issues previously
decided or to present arguments different from those already asserted (Emigrant Bank v Kaufman,
223 AD3d 650, 651-652 [2d Dept 2024], citing McGill v Goldman, 261
AD2d 593, 594 [2d Dept 1999]). Defendant's request for leave to reargue is granted, and
this Court will again adjudge the merits of Defendant's original motion seeking to
suppress the blood test results. 

FACTUAL FINDINGS
In consideration of Defendant's motion to reargue, this court has reviewed the
hearing transcripts and the body-worn camera footage received in evidence. All prior
factual findings [*2]are adopted and, as relevant to the
narrow issue presented here, this Court finds the following: at approximately 4:30 p.m.
on September 27, 2024, Officer Litvinenko received a 911 call regarding an intoxicated
driver, later identified as the Defendant (July 28, 2025 tr at 7-10). Upon arrival on scene,
Officer Litvinenko's partner spoke with the caller, who explained that after Defendant
nearly collided with caller's vehicle, he followed Defendant's vehicle until it came to rest,
double parked at a red light (July 28, 2025 tr at 7-9, 31-32). Once Defendant's vehicle
was stationary, the caller observed Defendant sleeping behind the wheel, prompting the
caller to remove Defendant's keys from the vehicle (July 28, 2025 tr at 8-9). When
Officer Litvinenko arrived, she observed Defendant asleep in the backseat of the vehicle,
his clothing in disarray (July 28, 2025 tr at 9-10). Officer Litvinenko's body-worn
camera, introduced as People's Exhibit 1 without objection, recorded her on-scene
observations (July 28, 2025 tr at 21). Based on interactions with Defendant, Officer
Litvinenko observed that his speech was slurred, he was unsteady on his feet, and an
odor of alcohol emanated from his breath (July 28, 2025 tr at 11). Thereafter, at 4:47
p.m., Defendant was arrested for driving while intoxicated (July 28, 2025 tr at 11;
People's Exhibit 1 at 16:47). Following his arrest, Defendant was transported by
ambulance to Lutheran Hospital for safety reasons based on his believed level of
intoxication (July 28, 2025 tr at 11, 14).
Defendant thereafter arrived at the hospital where, at 6:04 p.m., Officer Tkach
[FN1]
inquired whether Defendant would submit to a blood test (People's Exhibit 1 at 18:04;
July 28, 2025 tr at 15). In response, Defendant stated, unequivocally, "yes" (People's
Exhibit 1 at 18:04). Upon Defendant's reply, Officer Tkach provided a hospital staffer
with an NYPD blood test kit (People's Exhibit 1 at 18:05; July 28, 2025 tr at 15). In
preparation for the blood draw, the hospital staffer, who noted previous draws where he
had been permitted to use hospital supplied needles, asked Officer Tkach whether he
could do so again, while acknowledging his understanding that he must use the NYPD
provided iodine swab and collection tubes (People's Exhibit 1 at 18:06-18:07). Officer
Tkach allowed the use of hospital needles while affirming that the provided iodine swab
and collection tubes must be used (People's Exhibit 1 at 18:07). Defendant's blood
sample was subsequently withdrawn by the hospital staffer without protest, and the
collection tubes containing the specimens immediately provided to Officer Litvinenko
who labeled them and placed them in the NYPD collection kit (People's Exhibit 1 at
18:08-18:12). 

 DISCUSSION
Defendant contends that this Court misapplied controlling principles of law, arguing
disregard of both the plain text of VTL § 1194 (4) (a) (1) and existing precedent
applying the statute. The cited statute concerns administration of testing procedures such
as this one, where, at the direction of a police officer, blood is withdrawn from an
individual suspected of driving while under the influence of alcohol or drugs (Vehicle
and Traffic Law § 1194 [4] [a] [1]). Contained within the statute's text is a
delineation of various medical personnel authorized to perform such a blood withdrawal,
a restriction of their exposure to liability for any act done or [*3]omitted during the withdrawal, and the provision that
non-physician testimony regarding a blood withdrawal may be afforded the same
evidentiary weight as one performed by a physician (id.).
In support of his argument, Defendant assuredly claims that suppression is the proper
remedy where, as argued here, the evidence fails to establish that the individual
administering the blood draw was one authorized under the statute. However, the cases
relied upon by Defendant in support of this proposition reveal the dissonance amongst
the Appellate Courts regarding the proper remedial forum. Rather than uniformly
adopting suppression as the exclusive remedy, several of the cases provided by
Defendant treat the issue as one of admissibility (see e.g. People v Moser, 70
NY2d 476 [1987]; People v Casa, 306 AD2d 353 [2d Dept 2003];[FN2]
People v Griesbeck, 17
AD3d 717 [3d Dept 2005]). Given the apparent discord, this Court analyzed the
relevant statutes, VTL sections 1194 and 1195, and CPL 710.20, to reconcile this
incongruity. VTL § 1195 provides explicit guidance on the handling of chemical
test evidence, and is instructive on this issue.
The text of VTL § 1195 separately considers the issues of admissibility and
suppression with respect to chemical test evidence (Vehicle and Traffic Law § 1195
[1], [3]). Subdivision one provides that evidence of the amount of alcohol in a
defendant's blood shall be admissible at trial when such evidence is acquired in
compliance with the provisions of VTL § 1194 (see Vehicle and Traffic
Law § 1195 [1]). Separately, subdivision three provides for suppression of chemical
test evidence as a remedy only where such evidence is obtained by court-ordered
compulsion of submission to the test (Vehicle and Traffic Law § 1195 [3]). Thus,
suppression may be an appropriate remedy solely where the evidence at issue was
obtained by court order. In contrast, an analysis of adherence to the provisions of VTL
§ 1194 (4) (a), which Defendant raises here, is instead a question of admissibility at
trial (Vehicle and Traffic Law § 1195 [1]; Larry Cunningham, Practice
Commentaries [McKinney's Cons Laws of NY, Vehicle and Traffic Law § 1195];
Griesbeck, 17 AD3d at 717). In addition to the plain text of these statutes,
Defendant's own argument, implicating the reliability of the test result rather than the
lawfulness of its procurement, supports this conclusion. 
Defendant argues that without identifying the individual who withdrew the blood,
there is no assurance that the draw was conducted in accordance with mandated
Department of Health regulations, specifically, there is no evidence regarding the type of
antiseptic used to cleanse Defendant's skin prior to the withdrawal (July 29, 2025 tr at 5).
The specific provision cited by Defendant, 10 NYCRR 59.2, governs "[t]echniques and
methods for determining blood and urine alcohol," and outlines qualitative directives that
must be complied with when analyzing a sample for blood alcohol concentration. The
cited provision also includes instruction mandates for the collection of a blood sample,
specifically, what type of solution can be used to cleanse the skin area to be drawn from,
and a requirement that the sample be clearly identified at the time of collection (10
NYCRR 59.2 [d], [e]). Incorporated within VTL § 1194 (4) (c) is a reference to the
application of approved Department of Health regulations governing "satisfactory
techniques or methods of conducting chemical analyses of a person's blood," such as the
one cited by [*4]Defendant. As such, the issue of the
sample's manner of collection is statutorily categorized as a component of the ultimate
analysis and determination of the test results, a query of admissibility. Moreover, since
the issue raised by Defendant arises from a provision within VTL § 1194, it falls
squarely within the admissibility directive of VTL § 1195, requiring adherence to
VTL § 1194 as a prerequisite to admissibility (Vehicle and Traffic Law § 1195
[1]).
That admissibility is the proper remedial forum and not suppression finds further
support within CPL 710.20 (5), which provides particularized grounds engendering a
motion to suppress. With respect to chemical test evidence, that statute prescribes
suppression as a remedy reserved solely for challenging evidence obtained by court
ordered compulsion.[FN3]
This intentional division of remedies is sound, considering that the principal question to
be answered at a suppression hearing is whether the police had lawful cause to take the
action that led to the evidence's seizure (People v Cook, 34 NY3d 412, 420-421 [2019], citing
People v Merola, 30 AD2d 963, 964 [2d Dept 1968]). Where the test is not
conducted upon statutorily implied or express consent, and is instead the consequence of
a court order, a determination of whether that order was lawfully obtained naturally
implicates the bedrock of a suppression hearing.
Moreover, this Court's analysis is founded in longstanding jurisprudence holding that
"a violation of a statute does not, without more, justify suppressing the evidence to which
that violation leads" unless "the principal purpose" of that statute is grounded in the
protection of a constitutional right (People v Greene, 9 NY3d 277, 280 [2007], citing
People v Patterson, 78 NY2d 711, 716-717 [1991], and People v Taylor,
73 NY2d 683, 690-691 [1989]). In Greene, defendant sought suppression of all
evidence obtained from a hospital's disclosure of his personal information, which led to
his arrest, claiming it was violative of the statutorily derived physician-patient privilege
(id. at 279-280). The Greene Court rejected defendant's argument, finding
that the relied upon privilege was "based on statute, not the State or Federal
Constitution," and it existed "primarily" to regulate a "private relationship" rather than to
protect against governmental conduct (id. at 281). Consequently, it conferred no
constitutional protections to the defendant, and suppression was an improper remedy
(id.).
Similarly, here, the intent underlying the statute's explicit enumeration of personnel
authorized to withdraw blood is rooted in the safeguarding of a suspect's health, aimed at
ensuring the patient's well-being will not be compromised by the blood draw (see
People v Moser, 70 NY2d 476, 478 [1987]). That this is the statute's aim is
supported by the remainder — and overwhelming majority — of the
subsection, which seeks to shield medical personnel from prospective claims of personal
liability regarding incidents arising from the blood withdrawal (Vehicle and Traffic Law
§ 1194 [4] [2]-[4]). Indeed, rather than conferring rights upon Defendant, the Court
of Appeals has recognized the entirety of VTL § 1194 as a statutory authority
bestowed upon law enforcement agencies to use as an "important investigative tool" in
determining a suspect's blood alcohol content (People v Washington, 23 NY3d 228, 231 [2014]). To that
end, the implied consent provision within VTL § 1194 (2) (a) was "designed to
encourage those suspected of alcohol-related driving offenses to comply with requests to
submit to chemical tests in order to obviate the need for securing court orders"
(id.). Thus, the [*5]overwhelming aim of the
statute is to facilitate a defendant's safe compliance with chemical testing, not the
protection of a defendant's constitutionally derived right. 
Consistent with the foregoing, this Court finds that the issue raised by Defendant is
one of admissibility and not suppression. The legislature unequivocally provided the
remedy of suppression of chemical test evidence only where that evidence was obtained
by court order (Vehicle and Traffic Law § 1195 [3]; CPL 710.20 [5]). Moreover,
there is no legal authority, neither supplied by Defendant nor identified by this Court, for
the conclusion that VTL § 1194 (4) (a) (1) is a derivation of a constitutional right
for which suppression would be a legally justified remedy (Greene, 9 NY3d at
280). Consequently, upon reconsideration, Defendant's motion to suppress is denied as
the remedy sought is legally unavailable. The issue of admissibility of the blood test
result is reserved for the trial court.

 CONCLUSION
Defendant's motion for leave to reargue pursuant to CPLR 2221 is granted. Upon
reconsideration of Defendant's motion, and for the reasons set forth herein, this Court
holds that the issue raised is one of admissibility, not suppression, and reserves the
decision of admissibility to the sound discretion of the trial court.
This constitutes the Decision and Order of this Court. 
Dated: September 30, 2025
Brooklyn, New York
ENTER:
Christopher
E. Whitehair, J.C.C.

Footnotes

Footnote 1: Though Officer Tkach's
name was not elicited during testimony, it is visible on his badge in the admitted
body-worn camera (People's Exhibit 1 at 18:06).

Footnote 2: Though not readily
apparent from the Court's decision, appellant's brief framed the issue as one of
admissibility, claiming that the court's error arose from its failure to strike the blood test
evidence from the jury's consideration while asserting that the supervising physician's
trial testimony was deficient.

Footnote 3: This Court is mindful of
the Court of Appeal's decision in People v Ayala, 89 NY2d 874 (1996), however
that holding narrowly addressed the scope of a People's interlocutory appeal as the "sole
issue."