# State of New York Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 8
The People &c.,
     Respondent,
   v.
Anonymous,
     Appellant.

Katherine M. A. Pecore, for appellant.
Julia P. Cohen, for respondent.
The Legal Aid Society, amicus curiae.

RIVERA, J.:

A court is without authority to consider for sentencing purposes erroneously unsealed official records of a prior criminal action or proceeding terminated in favor of the defendant. Where violation of the sealing mandate of CPL 160.50 impacts the ultimate

- 1 -

sentence, the error warrants appropriate correction. Such is the case here, where the court imposed on defendant a higher sentence than promised at his plea, based on its finding that the unsealed trial record—which the court mistakenly believed it could consider— established defendant's violation of a pre-sentence condition of his plea. The order of the Appellate Division should therefore be reversed, and the matter remitted for resentencing without reference to or consideration of the contents of the sealed record.

I.

Defendant pleaded guilty to fourth-degree criminal possession of a controlled substance in exchange for a four-year sentence of imprisonment followed by three years of post-release supervision. As relevant to this appeal, after defendant pleaded guilty, the court adjourned sentencing and imposed as a condition to the promised sentence that defendant "stay out of trouble."

Before sentencing, defendant was arrested and prosecuted for a crime allegedly committed after entering his plea. At defendant's request, the sentencing court agreed to adjourn defendant's sentencing pending resolution of the matter. The jury acquitted defendant of the new charge and the official record, including the trial transcript, was sealed in accordance with CPL 160.50.

The day following that acquittal, the prosecutor informed the court which had accepted defendant's criminal possession plea that the People would be requesting an enhanced sentence on the criminal possession conviction because defendant violated a pre-sentence condition of the plea by engaging in criminal conduct during the sentencing

adjournment, as made clear by defendant's trial testimony in the other case. The prosecutor then moved to unseal the records in the prior criminal action terminated by acquittal, arguing "justice requires" unsealing because the trial testimony was relevant to defendant's request to be sentenced under the terms of his plea. The court granted the motion.

Thereafter, the prosecutor submitted defendant's unsealed trial testimony in support of the People's argument that defendant should be sentenced to the maximum nine-year sentence (see Penal Law § 70.70 [4] [b] [ii]). Defense counsel objected to the unsealing and to the court's consideration of the trial testimony for purposes of sentencing, citing this Court's decision in Matter of Katherine B. v Cataldo (5 NY3d 196 [2005]). Counsel argued the court should sentence defendant to the four years, as promised.

The court found, based on defendant's trial testimony in the sealed proceeding, that defendant violated the condition of his plea that he not commit any further crimes, i.e., he "stay out of trouble." Accordingly, the court determined it was not bound by its promised four-year sentence and imposed an eight-year term of incarceration.

The Appellate Division affirmed the judgment (People v Anonymous, 161 AD3d 401, 402 [1st Dept 2018]). A divided Court concluded that Katherine B. controlled and it was error to unseal the records, but a unanimous court held that, under People v Patterson (78 NY2d 711 [1991]), the violation of the sealing statute "without more" did not require resentencing or a reduced sentence (Anonymous, 161 AD3d at 402; id. at 403 [Tom, J., concurring]). A Judge of this Court granted defendant leave to appeal (People v Anonymous, 32 NY3d 1063, 1063 [2018]).

## II.

Defendant argues that the sentencing court erred by unsealing the records and then relying on his unsealed trial testimony to deviate from the court's promised sentence. Defendant maintains that the court's unsealing and reliance on the unsealed records for sentencing purposes (1) violates the statutory scheme of CPL 160.50 and the prescriptive holding in Katherine B., and (2) undermines the legislative goals of preserving the presumption of innocence and ensuring that an individual suffers no consequences as a result of unsubstantiated accusations. The People respond that the court properly unsealed the records to determine whether defendant violated the plea. Alternatively, the People contend that even if it was error to unseal the records, under the reasoning of Patterson, the error does not require defendant to be resentenced without consideration of the unsealed records.

We conclude that the court erroneously granted the prosecutor's motion to unseal the records of the proceeding terminated by acquittal and improperly considered defendant's trial testimony in deciding not to adhere to the promised sentence. Further, because the court's sentence is based on that testimony, the proper remedy is to remit for defendant's resentencing without reference to the contents of the sealed records.

## III.

Whether the sealing was improper turns, foremost, on the language of CPL 160.50. "As the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning

thereof" (<u>People v Golo</u>, 26 NY3d 358, 361 [2015], quoting <u>Majewski v Broadalbin–Perth</u>

<u>Cent. School Dist.</u>, 91 NY2d 577, 583 [1998]). This is not the first time we have considered

the sealing mandate of CPL 160.50 and thus we are bound and guided by the Court's

previous exposition on the statute's scope and legislatively specified exceptions, as well as

the salutary purposes of the sealing regime.

A.

CPL 160.50 (1) provides, in relevant part:

> "Upon the termination of a criminal action or proceeding against a person in favor of such person, . . . unless the district attorney upon motion with not less than five days notice to such person . . . demonstrates to the satisfaction of the court that the interests of justice require otherwise, . . . the record of such action or proceeding shall be sealed . . . ."

"[T]he Legislature's objective in enacting CPL 160.50 . . . was to ensure that the

protections provided be 'consistent with the presumption of innocence, which simply

means that no individual should suffer adverse consequences merely on the basis of an

accusation, unless the charges were ultimately sustained in a court of law'" (<u>Patterson</u>, 78

NY2d at 716, citing Governor's Approval Mem, 1976 McKinney's Session Laws of NY,

at 2451). In other words, "[t]he sealing requirement was designed to lessen the adverse

consequences of unsuccessful criminal prosecutions by limiting access to official records

and papers in criminal proceedings which terminate in favor of the accused" (<u>Katherine B.</u>,

5 NY3d at 202 [citation omitted]). The "articulated rationale for the enactment of the

sealing statutes—the 'presumption of innocence' . . . [—]directed usually at pending

charges can surely have been viewed by the Legislature as even more germane in relation to favorably terminated matters" (Matter of Alonzo M. v New York City Department of Probation, 72 NY2d 662, 668-669 [1988]).  At its core, "[t]he statute serves the laudable goal of [e]nsuring that one who is charged but not convicted of an offense suffers no stigma as a result of [the accused] having once been the object of an unsustained accusation" (Hynes v Karassik, 47 NY2d 659, 662 [1979]).

The sealing mandate of CPL 160.50 (1), in combination with CPL 160.60—which provides that "the arrest and prosecution shall be deemed a nullity and the accused shall be restored, in contemplation of law, to the status the [accused occupied] before the arrest and prosecution"—requires more than a court's acknowledgment that the arrest and prosecution ended favorably.  The law clearly intends that the criminal action and proceedings be treated as if they never occurred—as if they are not part of defendant's past.  As the Court summarized in Matter of Alonzo M.,

> "when an action is favorably disposed of in an adult proceeding the records are sealed under CPL 160.50, the arrest and prosecution are deemed a nullity, the accused is restored to the status occupied before arrest and unless specifically required by statute, or directed by a superior court, the accused is not required to divulge information regarding the favorably terminated action. This statutory safety net protecting adults ensures that records and materials generated from an arrest and a favorably terminated proceeding are eliminated as facets of the accused's criminal pedigree" (72 NY2d at 667–668 [citations omitted]).

B.

In CPL 160.50 (1) (d), the legislature identified a restricted list of six exceptions to the sealing mandate's prohibition on access, including (d) (ii), relied upon by the People here.[1] That exception allows access to sealed records by "a law enforcement agency upon ex parte motion . . . , if such agency demonstrates to the satisfaction of the court that justice requires that such records be made available to it . . . " (CPL 160.50 [1] [d] [ii]).

---

[1] The six exceptions to the general bar on disclosure of sealed records provide access to:

> "(i) a prosecutor in any proceeding in which the accused has moved for an order pursuant to section 170.56 or 210.46 of this chapter, or (ii) a law enforcement agency upon ex parte motion in any superior court, or in any district court, city court or the criminal court of the city of New York provided that such court sealed the record, if such agency demonstrates to the satisfaction of the court that justice requires that such records be made available to it, or (iii) any state or local officer or agency with responsibility for the issuance of licenses to possess guns, when the accused has made application for such a license, or (iv) the New York state department of corrections and community supervision when the accused is on parole supervision as a result of conditional release or a parole release granted by the New York state board of parole, and the arrest which is the subject of the inquiry is one which occurred while the accused was under such supervision, or (v) any prospective employer of a police officer or peace officer . . . in relation to an application for employment as a police officer or peace officer; provided, however, that every person who is an applicant for the position of police officer or peace officer shall be furnished with a copy of all records obtained under this paragraph and afforded an opportunity to make an explanation thereto, or (vi) the probation department responsible for supervision of the accused when the arrest which is the subject of the inquiry is one which occurred while the accused was under such supervision . . . ." (CPL 160.50 [1] [d]).

"These six statutory exceptions are precisely drawn. This underscores the Legislature's commitment to prohibiting disclosure of sealed records—once initial sealing has not been forestalled by the court in the interest of justice—except where the statute explicitly provides otherwise" (Katherine B., 5 NY3d at 203). In Katherine B. this Court rejected an expansive reading of the exception relied upon by the People here and held that a superior court is not authorized under CPL 160.50 (1) (d) (ii) "to make sealed records available to a prosecutor for purposes of making sentencing recommendations" (id. at 199). Contrary to the position advocated by the People and adopted by the dissent (dissent op at 10), there is no analytically meaningful distinction between the respective prosecutors' intended use of the sealed records in Katherine B. and in defendant's case, and the holding and logic of Katherine B. applies with equal force to the instant appeal.

The petitioners in Katherine B. were tried and convicted of one count each of obstructing governmental administration. To aid in sentencing, the court directed the People to supply it with updated criminal histories in support of their sentencing recommendations. The People moved in Supreme Court under, as relevant here, CPL 160.50 (1) (d) (ii) to unseal records of prior criminal cases involving petitioners. The court granted the motion.

In holding that the records should not have been unsealed, this Court explained that "consistent with th[e] design and the 'plain intendment of the statutory scheme,' the 'general proscription against releasing sealed records and materials [is] subject only to a few narrow exceptions'" (id. at 202-203 [emphasis and citation omitted]). Noting that the

term "law enforcement agency" as it appears in CPL 160.50 always appears with the terms "police department" or "the division of criminal justice services," except in CPL 160.50 (1) (d) (ii), the Court found that the term "law enforcement agency" includes agencies such as police departments and the Division of Criminal Justice Services, a view supported by CPL 160.50's legislative history (id. at 204). Because, however, CPL 160.50 (1) (d) (i) specifically authorizes disclosure to a "prosecutor" in a "proceeding," the Court held that CPL 160.50 limits a court's authority to unseal records at the request of a prosecutor after commencement of a criminal proceeding (id. at 205). Therefore, providing access to the prosecutor to make a sentencing recommendation was error because the "primary focus" of CPL 160.50 (1) (d) "is the unsealing of records for investigatory purposes" (id. at 205). Indeed, as made clear by the statutory scheme and text, "the [l]egislature has limited a court's authority to make sealed records available to a prosecutor after commencement of a criminal proceeding to the singular circumstance delineated in CPL 160.50 (1) (d) (i)— where the accused has moved for an adjournment in contemplation of dismissal in a case involving marijuana charges below felony grade" (id.).

Here, the prosecutor sought access to the sealed records to present defendant's trial testimony to the court in support of the prosecutor's argument that defendant violated a pre-sentence plea condition, warranting imposition of an enhanced sentence, specifically the maximum sentence—more than double the incarceratory time promised by the court upon defendant's plea. The prosecution sought the sealed material it already knew to exist as evidence in support of his argument for an enhanced sentence. The court granted the

motion to unseal for that exact purpose.  Thus, as in <u>Katherine B.</u>, it was error for the court

here to unseal the criminal proceeding records for the noninvestigatory purpose of

presenting a sentencing recommendation and determining defendant's sentence.[2]

The People argue <u>Katherine B.</u> does not stand for what it holds, and, in any event,

that there are good reasons for us to narrow its reach.  The People's argument proceeds

along two paths, but both turn on their view of the court's sentencing obligation.  We are

unpersuaded as the first path is no more than a reformulated version of the argument

rejected in <u>Katherine B.</u> and the second is analytically unsound.[3]

First, the People argue that the District Attorney's Office is a law enforcement

agency with access to sealed records under the authority of CPL 160.50 (1) (d) (ii) when a

---

[2] The dissent's attempt to analogize the People's use of the trial materials here to the "investigatory function exercised by [DOCCS] and the probation department" (dissenting op at 10) is unpersuasive and unsupported by the record as the People were not seeking to investigate defendant.  Moreover, <u>Katherine B.</u> rejected the prosecution's attempt to go on a fishing expedition dressed up as an investigatory mandate (<u>see</u> 5 NY3d at 205).  In any case, the point is irrelevant.  The People may seek to unseal the record only as provided by the sealing statute, and, as <u>Katherine B.</u> made clear, the statutory language limits the prosecutor's access to such records post-commencement of a criminal prosecution in one limited circumstance not applicable here (<u>see</u> CPL 160.50 [1]).  The dissent merely attempts legislation by judicial pronouncement.

[3] In another version of this same attempt to recharacterize the prosecutor's actions here, the People and the dissent argue that unsealing was proper because the prosecution sought the transcript not for purposes of making a sentencing recommendation, but merely so the sentencing court could conduct a hearing and evaluate defendant's compliance with the no-new-crimes condition of his plea agreement.  However, the prosecutor's in court-representations and motion papers make clear that the prosecutor's sole purpose in requesting unsealing was to present defendant's testimony in support of the People's argument that the court should impose an enhanced sentence of nine years rather than the agreed to four years' incarceratory period.  In other words, the prosecutor unquestionably wanted the testimony as evidence to support his sentencing recommendation.  As we will discuss, that is no different from the intended use of unsealed materials in <u>Katherine B.</u>

court has continuing jurisdiction over a defendant for sentencing. According to the People, the "broad range of law enforcement entities" and the "variety of law enforcement purposes" that fall within the law enforcement exception cannot be squared with what they view as an overly narrow reading of Katherine B. (5 NY3d at 204). The People further assert that a court may grant such a motion under CPL 160.50 (1) (d) (ii) upon the prosecution showing "justice requires" unsealing. That view is untenable given the holding in Katherine B., which makes clear that the People cannot seek the records under CPL 160.50 (1) (d) (ii) for post-criminal-proceeding purposes and, specifically the purpose sought here—namely, to recommend a sentence based on sealed court records.[4] Moreover, as the Court explained therein, the interest of justice ground set forth in CPL 160.50 (1) only applies when the People seek to stay the sealing of records, not to unseal them (Katherine B., 5 NY3d at 203; see also CPL 160.50 [1] ["Upon the termination of a criminal action or proceeding(,) . . . unless the district attorney upon motion . . . demonstrates to the satisfaction of the court that the interests of justice require otherwise, . . . the record . . . shall be sealed . . . ."]), or when a "law enforcement agency"—which the People are not under Katherine B.—seeks to unseal (CPL 160.50 [1] [d] [ii]).

---

[4] The dissent deploys this flawed analysis to argue that our reading of Katherine B. is inconsistent with a prosecutor's continuing duty to ensure against the wrongful accusation and prosecution of a defendant, which does not cease once a criminal action commences (dissenting op at 9 n 4). The point does not affect the analysis here. The prosecutor's duty is not a novel one. It is certainly a duty understood by the legislature, as well as this Court when it decided Katherine B. The legislature has determined that certain materials cannot be used in support of a sentencing recommendation, and we are obligated to adhere to this legislative determination.

"Where a statute describes the particular situations in which it is to apply and no qualifying exception is added, 'an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded'" (Matter of Alonzo M., 72 NY2d at 665-666, quoting Patrolmen's Benevolent Assn. v City of New York, 41 NY2d 205, 208-209 [1976]; see also McKinney's Cons Laws of NY, Book 1, Statutes § 240 at 412-413 ["(W)here a statute creates provisos or exceptions as to certain matters the inclusion of such provisos or exceptions is generally considered to deny the existence of others not mentioned."]).  Here, the sealing mandate of CPL 160.50 (1) applies by its plain terms, and the legislature did not provide broad authority in CPL 160.50 (1) (d) for the release of sealed records to prosecutors, instead choosing to confine post-proceeding access to narrowly-defined circumstances.  As we may not "legislate under the guise of [statutory] interpretation," we reject the dissent's arguments that would require us to expand CPL 160.50 beyond its plain language (People v Finnegan, 85 NY2d 53, 58 [1995]).

The People's second brand of argumentation is based on what they assert is an independent source of judicial authority: the court's constitutional and statutory mandates to impose a sentence based on reliable and accurate information.  More specifically, the People maintain that the trial court properly unsealed the transcript to effectuate defendant's due process rights and the court's statutory obligation under CPL 400.10 (4).  As to the constitutional claim, they ignore that due process requires that a defendant be sentenced in accordance with the law, and the law here does not permit unsealing for sentencing recommendation purposes.  The People's reliance on CPL 400.10 (4) fares no

better because that provision merely states that "the court shall take into consideration the defendant's record of compliance with pre-sentence conditions ordered by the court." Here, there is no question that the court may consider defendant's compliance with pre-sentence conditions. However, the question is what constitutes defendant's history for that purpose. For the reasons we have discussed, a sealed record is simply not available for consideration at sentencing. It is a nullity and the court cannot rely on it to impose a sentence.

Put a slightly different way, the court's continuing jurisdiction for purposes of sentencing—the sentencing court's rationale here—did not provide an independent basis to unseal defendant's testimony in a previous, favorably terminated criminal prosecution. The Court long ago rejected the view that a court's inherent authority over its proceedings grants power to unseal because that "would subvert the plain intendment of the statutory scheme—to establish, in unequivocal mandatory language, a general proscription against releasing sealed records and materials, subject only to a few narrow exceptions" (Matter of Joseph M. [New York City Bd. of Educ.], 82 NY2d 128, 134 [1993] [emphasis in original]; see also Matter of Alonzo M., 72 NY2d at 668 [expressing concern that courts' inherent authority over their own records would be "dubious authority (upon which) to override so clear a legislative policy" set forth in a sealing statute]). In accordance with our settled rules of statutory interpretation, we have eschewed efforts to rewrite the statute to achieve what a court or advocate perceives to be a better outcome, because "if there is to be an

exception to the general rule proscribing the release of sealed records . . . it should be created by the [l]egislature, not by the courts" (Matter of Joseph M., 82 NY2d at 134).[5]

The legislature has also rejected this very basis for the unsealing of records. In 1977, the legislature eliminated a provision that automatically stalled sealing when another action was pending against the defendant, replacing it with the current language that allows a court to stay sealing upon a determination that "the interests of justice" require it. The legislature determined "the existence or non-existence of another pending action is really irrelevant" (Governor's Program Bill Mem, Bill Jacket, L 1977 ch 905). Where the action "has been determined favorably to the defendant, [the defendant] is entitled to have the record thereof sealed" because any pending action, should there be one, "will eventually be resolved, in terms of section 160.50 on its own merits" (id.). The prosecutor here failed to pursue this option, instead choosing the next day to inform the court that it would move to unseal the record.

Notably, more recently, the legislature rejected an attempt to amend the statute in the way the People advocate the current version should be interpreted. Legislation introduced in 2011 proposed a seventh enumerated exception permitting a party in a

---

[5] Contrary to the dissent's opinion, we do not undermine judicial control of sentencing or "erect unreasonable barriers" (dissenting op at 18), nor is the result in this appeal "absurd" (dissenting op at 18). Notwithstanding the dissent's hyperbole, our holding merely emphasizes a court's obligation to apply CPL 160.50 as written. The dissent ignores that the prosecutor may object to sealing in the first instance (CPL 160.50 [1]). Once the record is sealed, the prosecutor may present evidence from an independent source to establish defendant's noncompliance with sentencing conditions (see infra Part IV). Thus, properly understood and applied, the legislative scheme seamlessly protects a defendant's and society's interests.

criminal proceeding to move for unsealing upon notice to the adverse party, if it "demonstrates to the satisfaction of the court that justice requires that the records be made available to [it] in connection with the criminal proceeding" (2011 NY Assembly Bill A7389). The amendment was intended to address the holding of Katherine B., which the sponsor considered to have "inappropriately narrowed the situations where the Court may unseal records" (Sponsor's Mem, 2011 NY Assembly Bill A7389). Although "[l]egislative inaction, because of its inherent ambiguity, affords the most dubious foundation for drawing positive inferences" (Clark v Cuomo, 66 NY2d 185, 190–191 798 [1985] [internal quotation marks and citation omitted]), "[w]e have distinguished [] instances in which the legislative inactivity has continued in the face of a prevailing statutory construction" (Desrosiers v Perry Ellis Menswear, LLC, 30 NY3d 488, 497 [2017], quoting Brooklyn Union Gas Co. v New York State Human Rights Appeal Bd., 41 NY2d 84, 90 [1976] [internal quotation marks omitted]; see also Matter of NYC C.L.A.S.H., Inc. v New York State Office of Parks, Recreation & Historic Preserv., 27 NY3d 174, 184 [2016] [looking to "whether the legislature has unsuccessfully tried to reach agreement on (an) issue, which would indicate that the matter is a policy consideration for the elected body to resolve"]). "When the Legislature, with presumed knowledge of the judicial construction of a statute, for[]goes specific invitations and requests to amend its provisions to effect a different result, we have construed that to be some manifestation of legislative approbation of the judicial interpretation" (Matter of Alonzo M., 72 NY2d at 667). Thus, the rejection of a legislative attempt to adopt the People's argument reinforces the correctness of the

interpretation pronounced in <u>Katherine B.</u> and supports our reading of CPL 160.50 as applied to the facts of defendant's appeal.[6]

The People mistakenly rely on <u>Matter of New York State Commission on Judicial Conduct v Rubenstein</u> (23 NY3d 570 [2014]) as suggesting that courts have independent authority to unseal. There, we clarified that "absent 'extraordinary circumstances' [], a specific grant of power [], or the existence of a legal mandate the nature of which would be impossible to fulfill without unsealing criminal records," such records may be obtained only in accordance with CPL 160.50 (1) (d) (<u>id.</u> at 581). There are no extraordinary circumstances here, where the prosecutor did no more than seek to use a sealed court record to support a sentence recommendation—that was the case in <u>Katherine B.</u>

There is neither a specific grant of power nor a mandate that cannot be fulfilled without the sealed records within the meaning of our holding in <u>Rubenstein</u>. Indeed, in applying the standard in that case, we held that the constitutional authorization of the Judicial Commission and Judiciary Law § 42 (3) provided separate sources for access to sealed records because without such access, it would be impossible for the Commission to fulfill its legal mandate, which included "ensuring the integrity of the judiciary" (<u>Rubenstein</u>, 23 NY3d at 582). The integrity of the court is not at issue here. Quite the

---

[6] The dissent maintains that ensuring a sentence in accordance with the plea should outweigh the mandates of the sealing statute (dissent op at 13). Although the dissent might have it otherwise, the legislature has weighed these interests and rejected the dissent's view by enacting the sealing statute, which "strikes the balance by requiring sealing in a wide variety of contexts and providing for the disclosure of sealed files in only limited circumstances" (<u>Harper v Angiolillo</u>, 89 NY2d 761, 767 [1997]), none of which permit unsealing for sentencing purposes.

contrary, as the statutory purpose and limited exceptions to sealing are intended to preserve the presumption of innocence and protect the defendant from the type of general justifications for access deployed here by the People. Therefore, the fact that the court retained jurisdiction over defendant does not provide authority independent of CPL 160.50 to access the records once sealed. The People's remaining claim that unsealing was not error, namely that the court did not rely on the charged crime but rather on defendant's testimony revealing conduct that violated the sentencing condition, is essentially an argument that his testimony does not fall within the scope of CPL 160.50. This ignores the Court's prior acknowledgement that the "ambit of the sealing requirement is broad" by its plain text (Harper, 89 NY2d at 766), which does not contain within its "narrow exceptions" a carveout for any particular class of materials. Instead, "the sealing covers 'all official records and papers . . . relating to the arrest or prosecution'" (Katherine B., 5 NY3d at 202, quoting CPL 160.50 [1] [c]). The broad statutory coverage includes trial testimony provided in defense of the charges. Moreover, the purpose of the sealing statute is to "lessen the adverse consequences of unsuccessful criminal prosecutions by limiting access to official records and papers in criminal proceedings which terminate in favor of the accused" (Harper, 89 NY2d at 766). Here, but for the unsuccessful prosecution, there would be no trial testimony by defendant about his involvement in another crime. Indeed, defendant's testimony was integral to his defense.

Apart from the analytic flaws in the People's and dissent's arguments, we cannot ignore the potential impact on the legislature's carefully designed statutory framework if

we stamp our imprimatur on the unsealing of defendant's trial testimony because the sentence was conditional. It is not uncommon for courts to impose terms on a sentence promised in exchange for a defendant's guilty plea. The condition at issue here—"stay out of trouble" —is in no way unique or exceptional (see e.g. People v Reynolds, 117 AD3d 478, 478 [1st Dept 2014], affd 27 NY3d 1099 [2016] ["The court properly determined that defendant violated the 'no-arrest' condition of his plea agreement . . . ."]; People v Bracy, 131 AD3d 538, 539 [2d Dept 2015] [same]; People v Fink, 97 AD3d 974, 976 [3d Dept 2012] [same]; People v Bennett, 4 Misc3d 287, 288 [Sup Ct, Kings County 2004] [imposing a no-new-arrest requirement]).[7] Adopting any of the People's or the dissent's arguments would permit unsealing in every case where the People challenge a defendant's compliance with the terms of a plea, rendering CPL 160.50 ineffective and turning the sealing of records into the exception rather than the rule. We must be "careful when considering whether to permit access to sealed records so that we do not undermine the legislative goals of CPL 160.50, and make unsealing of records the rule rather than a narrowly confined exception" (Rubenstein, 23 NY3d at 581).

---

[7] Our conclusion that the terms of the plea agreement are not "unique or exceptional" bears no relation to the alleged criminal propensities of the "average" defendant (dissenting op at 13). Likewise, contrary to the dissent's assertion, there is nothing exceptional about application of the sealing mandate to all the records in defendant's prosecution upon his acquittal, and holding the court to the legislative intendment as set forth in CPL 160.50 and affirmed by Katherine B.

IV.

The Appellate Division wrongly concluded that defendant was not entitled to a remedy for this violation of CPL 160.50, relying, as the People and the dissent do here, on this Court's decision in <u>Patterson</u> (<u>Anonymous</u>, 161 AD3d at 402–403; <u>id.</u> at 403 [Tom, J., concurring]).  However, <u>Patterson</u> is distinguishable and no bar to defendant's request that he be resentenced without consideration of the erroneously unsealed record.

In <u>Patterson</u>, the police department failed to return defendant's photograph taken in connection with an unrelated proceeding, which was dismissed and the file sealed.  The photograph was later used in an identification procedure in connection with the defendant's prosecution in an unrelated criminal matter.  The defendant argued that suppression of in-court identification testimony was mandated in order to protect a "substantial right" that "relate[s] rather closely" to Fourth Amendment protections conferred by CPL 160.50 and to "further the underlying purposes of the exclusionary rule" (78 NY2d at 714-715).  The Court rejected this argument, holding "there is nothing in the history of CPL 160.50 or related statutes indicating a legislative intent to confer a constitutionally derived 'substantial right', such that the violation of that statute, without more, would justify invocation of the exclusionary rule with respect to subsequent independent and unrelated criminal proceedings" (<u>id.</u> at 716).  In so holding, the Court explained that defendant did not challenge the identification procedure or otherwise question its reliability, nor did he claim the photograph was unlawfully taken or that the use of the photograph affected the

determination of his guilt or innocence (id. at 714). In other words, the defendant in

Patterson did not claim that the failure to seal the photograph affected the conviction.

Patterson involved a challenge on direct appeal to in-court identification testimony

supported by pre-trial use of an unsealed photograph of the defendant in a photographic

array. In contrast, defendant here seeks a limited post-unsealing remedy in a different

context for a different violation—the court's post-conviction use of unlawfully obtained

records to determine defendant's noncompliance with the sentencing conditions.

Defendant seeks to correct a sentence imposed by the court based on its finding that

defendant violated the condition of his plea agreement as established by his unsealed trial

testimony.[8]

In arguing against defendant's request to be resentenced in a manner that comports

with the goals of CPL 160.50, the People place undue significance on Patterson's

conclusion that CPL 160.50 does not confer a constitutionally derived substantial right.

The People and the Appellate Division understood that language to mean that reliance on

erroneously unsealed materials for sentencing results in an injury without remedy.

---

[8] Katherine B. involved a civil action to prevent unlawful unsealing (5 NY3d at 201 n 1). We have no occasion to consider such preemptive conduct here, except to note that the CPL permits defendant's challenge to the misuse of the erroneously unsealed court record on his direct appeal (see CPL 450.10 [2] [a defendant may appeal "(a) sentence . . . unless the appeal is based solely upon the ground that a sentence was harsh or excessive when such sentence was predicated upon entry of a plea of guilty and the sentence imposed did not exceed that which was agreed to by the defendant as a condition of the plea and set forth in the record or filed with the court . . . ."]; CPL 450.30 (1) ["An appeal by the defendant from a sentence, as authorized by subdivision two of section 450.10, may be based upon the ground that such sentence either was (a) invalid as a matter of law, or (b) harsh or excessive" (emphasis added)]).

Patterson does not support such a sweeping proposition. Rather, the relief sought in that case—application of the Fourth Amendment exclusionary rule to suppress an in-court identification of the defendant premised upon the use of defendant's photograph in an earlier photo array—was unavailable because the defendant established what the majority called a "technical" violation of CPL 160.50 without more. Here, there is more than the erroneous unsealing of the court record; there is the improper reliance by the court on the sealed testimony to enhance defendant's sentence. The trial testimony persuaded the court that defendant violated a pre-sentence condition of his plea and supplied the grounds for the court to deviate from its promised sentence. This direct impact on the sentence satisfies the requirement that a defendant show more than a "technical" statutory violation.[9] Thus, on Patterson's own terms, the holding and analysis of that case support rather than foreclose resentencing of defendant here. Contrary to the dissent's characterization (dissent op at 15), the remedy we recognize is not suppression of evidence obtained in violation of the Fourth Amendment, as was the case in Patterson, where the Court rejected application of the exclusionary rule on the facts of that case (Patterson, 78 NY2d at 718). Nor is the remedy invoked against the sentencing court (dissenting op at 17). Instead, the remedy

_____

[9] The dissent unpursuasively attempts to distinguish this appeal from Katherine B. by arguing that here, the court did not unseal the transcript of the criminal action terminated favorably in defendant's favor for the purpose of sentencing defendant based on the factual allegations that gave rise to the acquitted charge. As stated above and expressly in the statute, CPL 160.50 protects the "record" of an "action or proceeding" terminated in favor of the accused, not only the "factual allegations" related to the crime for which the defendant was acquitted.

here is intended to ensure the sentencing court has access only to information permitted under the legislature's carefully drafted sealing framework (see CPL 160.50).

In the post-Patterson cases relied upon by the People we have taken a similar view of the need for a connection between the statutory violation and the alleged harm sought to be corrected. In Matter of Charles Q. v Constantine (85 NY2d 571 [1995]), the Court rejected the petitioner's request to annul the decision to terminate his employment as a state trooper because evidence sealed under CPL 160.50 was submitted at his disciplinary hearing. The Court held annulment was not required based on the "mere reception" of erroneously unsealed evidence, "without more" (id. at 575). The Court explained that the respondent's determination was supported by the petitioner's own testimony and "there is no indication that the admission of the erroneously unsealed evidence operated to deprive petitioner of a fair hearing" (id. at 576). In other words, consideration of the unsealed records was not outcome-determinative and the decision to terminate employment was supported by independent evidence. Here, the People did not present independent evidence that defendant violated the conditions of his plea, but instead sought to avoid their burden by relying on the contents of the unsealed record.

Similarly unhelpful to the People is People v Greene (9 NY3d 277, 280 [2007]), a case that does not even involve CPL 160.50. The Court there held that a violation of the physician-patient privilege that ultimately led to the defendant's conviction did not require suppression of erroneously obtained medical information (id. at 280). As the Court explained, "the privilege does not apply to 'such ordinary incidents and facts as are plain

to the observation of any one without expert or professional knowledge'" (id., quoting Klein v Prudential Ins. Co. of Am., 221 NY 449, 453 [1917]).  Therefore, when police learned from hospital personnel that the defendant had sought treatment for a knife wound on his face, and this information ultimately lead to his conviction for second degree manslaughter, the Court found, consistent with Patterson, that violation of the statutory privilege "without more" did not require suppression of the information obtained in violation of the privilege (Greene, 9 NY3d at 280). Even if there was a violation of the physician-patient privilege, because of the independent evidence supporting the defendant's conviction, violation of the privilege did not affect the outcome of the proceeding (see id. at 280-281).

Defendant here seeks to be sentenced without consideration of the unsealed record because the use of his testimony at sentencing was the sole basis for the enhanced sentence. This appeal seeks a remedy for the injury flowing from an erroneous sentencing process and ultimate sentence determination.  The only remedy for that error—indeed the only way to restore defendant "to the status occupied before arrest" on the acquitted charge—is to remit for resentencing without consideration of the trial testimony obtained in violation of the sealing statute (Matter of Alonzo M., 72 NY2d at 667).  This would ensure the legislative intent that the sealed matter remains a nullity (see id.).[10]

---

[10] Unlike the dissent, we do not opine or engage in speculation about possible outcomes concerning the People's strategy upon remittal (dissenting op at 18).  In any case, as the dissent acknowledges, the provision of the statute that allows for a stay of sealing within five days of termination of the proceeding in favor of the accused (CPL 160.50 [1]) is a legislative choice, not a judicial rule.

Of course, upon resentencing, the People may present evidence not obtained from the sealed record to establish that defendant violated the pre-sentence plea conditions, supporting a longer sentence than promised at the plea. We take no position on the permissible source or nature of such evidence.

V.

In sum, the Appellate Division properly concluded that the sentencing court erroneously unsealed the court record of the proceeding in which defendant was acquitted because, as explained in Katherine B., CPL 160.50 (1) (d) (ii) does not permit the prosecutor access to sealed records for sentencing purposes in another matter. However, the Appellate Division incorrectly held defendant has no remedy when the sentencing court relied exclusively on the unsealed record to enhance his sentencing. Instead, the court should have ordered the sentence vacated and the case remitted for resentencing without reference to or consideration of the sealed records.

Accordingly, the order of the Appellate Division should be reversed and the case remitted to Supreme Court for further proceedings in accordance with this opinion.

People v Anonymous

No. 8

DiFIORE, Chief Judge (dissenting):

Defendant pleaded guilty and, in exchange for the court's promise setting forth the range of sentences to be imposed depending upon his compliance with certain conditions, agreed that he would stay out of trouble while awaiting sentencing. Four months later, defendant was arrested and indicted for new criminal activity. He proceeded to trial on the

new case and, while testifying under oath, admitted that he engaged in postplea drug activity – a clear violation of the plea conditions. The majority, claiming that CPL 160.50 was intended to shield this type of information, now prohibits the sentencing court from considering defendant's testimony and performing its duty to impose a proper sentence in accordance with the express terms of the plea bargain agreement.

The CPL 160.50 sealing statute generally commands that where a criminal action is terminated in favor of an accused, the official records are sealed to protect the individual who was the subject of prosecution, particularly in his or her pursuit of future prospects untainted by any stigma resulting from a criminal action. The statute, however, provides a clear path to obtain the records in the interests of justice by the prosecutor and the court and also contains an express exception that, here, authorized the sentencing court to access the transcript of defendant's testimony in order to obtain evidence that he violated the terms of his plea agreement. Even assuming the trial court's unsealing order violated CPL 160.50 – and it did not – defendant is not entitled to the drastic remedy of suppression. Therefore, I would affirm the Appellate Division order.

I

Defendant was convicted, upon his negotiated guilty plea, of the reduced charge of criminal possession of a controlled substance in the fourth degree, in satisfaction of the top count of the indictment – a class A-II drug felony. Pursuant to the plea deal, defendant faced a maximum prison term of nine years, but was given a promise of four years' imprisonment – the legal minimum, given defendant's predicate violent felony conviction

– to be followed by three years' postrelease supervision (PRS). The court expressly instructed defendant that the promised sentence was conditional and that, in order to receive the four-year term, he would be required to comply with three conditions. As relevant here, defendant was advised that he had to stay out of trouble and he could not be arrested for a new offense. The court informed defendant that, upon a violation of the terms of the guilty plea agreement, it would not be bound by the four-year minimum term and defendant would, instead, face up to a maximum of nine years in prison. Defendant confirmed that he understood the terms of the plea agreement and its conditions. The court adjourned sentencing for several months.

Approximately four months later, and prior to sentencing on the drug conviction, defendant was arrested and indicted on robbery charges. Although the court could have held an immediate hearing and found defendant in violation of the terms of his plea agreement if it determined that there was a legitimate basis for the arrest (see People v Outley, 80 NY2d 702, 713 [1993]), the court agreed to further adjourn sentencing until prosecution of the new indictment concluded. The court also rejected the People's request to vacate defendant's entire plea agreement based on the new criminal activity.

At trial on the robbery indictment, defendant elected to testify in his own defense and denied his guilt of the factual allegations of the charged offenses. However, in open court, under oath, defendant admitted to participating in drug activity in the period following his guilty plea. The jury acquitted defendant of the crimes charged, which did not include a drug offense.

The following day, defendant, defense counsel and the prosecutor appeared before the court presiding over the drug conviction.  In light of the acquittal, defendant made an application to be released on bail.  The People opposed the request and represented to the court that, during the trial, defendant testified under oath that he had committed large scale drug crimes while out on bail awaiting sentencing on his drug conviction.  Relying on the express terms of the plea agreement, the People stated that they would be seeking an enhanced sentence – the maximum nine-year term – based on defendant's violation of the court's presentence conditions.  After defense counsel disputed, in minor part, the People's factual account of defendant's trial testimony, the court directed the People to particularize the information in support of their assertion that defendant engaged in postplea criminal conduct in violation of his plea agreement.  In response to the prosecutor's inquiry, the court indicated that it would sign an order unsealing the record of the robbery trial, but that it would allow both sides to be heard before it determined whether an elevated sentence was warranted.  Defendant interposed no objection.

The People then applied for an unsealing order pursuant to CPL 160.50 (1) (d) (ii), invoking the statute's law enforcement agency exception and arguing that the court should consider defendant's trial testimony in determining whether he had violated the court's conditional promise.  After the court unsealed the records, the People urged the court to consider defendant's admission of postplea criminal conduct in imposing an appropriate sentence.

In response, defense counsel did not dispute the content of defendant's trial testimony, but asserted that defendant had previously related the substance of that

testimony to the prosecutor prior to the trial – essentially, defendant asserted that he had been candid with the People about his involvement in the drug transaction and the reasons therefor, which he viewed as mitigating factors for his new criminal activity. About six weeks later, defense counsel provided a supplemental submission arguing that the unsealing order ran afoul of Matter of Katherine B. v Cataldo (5 NY3d 196 [2005]). Defendant asserted that Katherine B. prevented the prosecutor from making a CPL 160.50 request to unseal the record of a favorably terminated criminal action for purposes of making a sentencing recommendation.

The People countered that Katherine B. was distinguishable, particularly given defendant's admission to committing new crimes postplea – separate from the factual allegations of the charges for which he was acquitted. They further posited that there was an alternative method for the court to obtain defendant's trial testimony pursuant to CPL 160.50 – through an application by the police department – or that the trial prosecutor in the robbery case, who was a witness to the admissions, would be able to recount the testimony.

At the sentencing proceeding/Outley hearing on the drug conviction, the court concluded that Katherine B. was inapplicable because defendant remained under the court's jurisdiction until sentence was imposed in the pending plea case and the court had the concomitant obligation to determine whether defendant complied with the terms of his plea agreement. Defense counsel, arguing that defendant should be sentenced to the minimum four-year term of imprisonment, conceded that defendant engaged in conduct that violated the plea agreement, but maintained that his postplea criminal conduct was

limited to the single day from which the robbery charges had stemmed and was defensible in light of defendant's motivations unrelated to the robbery allegations.

Based on defendant's trial testimony, in which he admitted to participating in a drug transaction, the court found defendant in violation of the conditions of his plea agreement, vitiating the promise of the four-year minimum sentence. The court then sentenced him to a term of eight years' imprisonment, to be followed by three years' PRS. The record is unequivocal that the court did not consider the robbery allegations for which defendant was acquitted. Defendant contends, and the majority now agrees, that CPL 160.50 bars the sentencing court from viewing the trial transcript containing evidence of a clear violation of the plea agreement, despite the sentencing court's core function in the adjudicatory process and the law enforcement purpose in accessing that record in the interests of justice. I disagree.

II

When a criminal action is terminated in favor of the accused, CPL 160.50 provides that the record shall be sealed unless, in the five-day period following the termination, there is a forestalling of the sealing when the People demonstrate, or the court on its own motion determines, that "the interests of justice require otherwise" (CPL 160.50 [1]).[11] The sealing requirement applies to "all official records and papers . . . relating to the arrest or prosecution" (CPL 160.50 [1] [c]). Once sealed, the statute sets forth six enumerated exceptions where the records must be made available, including a broadly worded "law

---

[11] The People do not argue that their request, within 24 hours of the acquittal, for the court to consider an unsealing order for defendant's trial testimony fits within this provision.

enforcement" exception.   That provision specifies that sealed records "shall be made available to . . . a law enforcement agency" so long as "such agency demonstrates to the satisfaction of the court that justice requires that such records be made available to it" (CPL 160.50 [1] [d] [ii]).  We have recognized that the statutory "exceptions are precisely drawn" and that the legislative intent is to preclude disclosure of sealed records unless specifically authorized by the statute (Katherine B., 5 NY3d at 203).

The statute's delineated exceptions are reflective of the legislature's acknowledgement of "countervailing considerations to the sealing of such records and papers" (Matter of Harper v Angiolillo, 89 NY2d 761, 766 [1997]).  Accordingly, the statute "balances the rights of a former defendant to restrict and obtain access to official records and papers in favorably terminated criminal proceedings, against the interests of various law enforcement agencies and representatives in the same materials" (89 NY2d at 767).[12]  While commanding the sealing of official records, the statute does not grant immunity to a defendant on the underlying factual allegations.  On the other hand, a defendant is protected from reprosecution for the same offense by the Double Jeopardy Clause of the United States Constitution (see US Const Fifth Amend; see also NY Const, art I, § 6; CPL art 40).

It is well-settled that CPL 160.50 "serves the laudable goal of insuring that one who is charged but not convicted of an offense suffers no stigma as a result of his having once

---

[12] Likewise, we have observed that whether a particular record is an "official record" subject to the sealing requirement is not suitable for a bright line rule and may differ based on the circumstances of the particular case (89 NY2d at 765-766).

been the object of an unsustained accusation" (Matter of Hynes v Karassik, 47 NY2d 659, 662 [1979]) and was designed to "remove the punitive collateral consequences of an arrest where such person has been accorded treatment other than a conviction" (Introducers' Mem in Support, Bill Jacket, L 1976, ch 877).  A particular impetus for the sealing protection was to enable a former accused to "pursue employment, education, professional licensing and insurance opportunities untainted by the stigma of a criminal prosecution" (Harper, 89 NY2d at 766).  To accomplish that end, the statute prohibits adverse action – e.g., employment, housing, credit – against an individual on the basis of a criminal action terminated in the individual's favor (see Executive Law § 296 [16]).

III

In concluding that the court improperly unsealed the transcript here, defendant and the majority believe that this case is controlled by our interpretation of CPL 160.50 in Katherine B. – an interpretation provided in the narrow context of a prosecutor's use of sealed records for a sentencing recommendation.  There, the petitioners were convicted after trial of obstructing governmental administration and disorderly conduct.  In response to the court's request for updated criminal histories, the People moved ex parte, pursuant to CPL 160.50 (1) (d) (ii),[13] to unseal the petitioners' official records, terminated in their favor, in order to make a sentencing recommendation.  Based on information in the unsealed records, the People advised the court that the petitioners had been involved in

---

[13] The People also obtained unsealing orders pursuant to CPL 160.55 (1) (d) (ii), but those unsealing orders were not challenged by the petitioners on the appeal and therefore were not before the Court (see 5 NY3d at 201 n 3).

previous acts of civil disobedience and recommended a harsher sentence based on the allegations taken from the complaints in those unsealed records (see 5 NY3d at 200).

In analyzing CPL 160.50, the Court concluded that the "primary focus" of most of the statutory exceptions "is the unsealing of records for investigatory purposes" (5 NY3d at 205) and that various law enforcement agencies are authorized to use such records. "[I]nvestigatory purposes" is not a statutory term, but we referenced, "[b]y way of analogy," ex parte applications for eavesdropping warrants (CPL 700.10 [1]) and pen register or trap and trace devices (CPL 705.15 [1]) – applications for court orders which can be made by a District Attorney's Office (see also People v Losinno, 38 NY2d 316, 318 [1975] ["There is no question but that the District Attorney is a law enforcement officer"]; CPL 700.05 [5]; Executive Law § 838-b). However, given that the term "law enforcement agency" was also not defined in the statute and that the word "proceeding" did not appear in the law enforcement exception, we opined that "the Legislature has limited a court's authority to make sealed records available to a prosecutor after commencement of a criminal proceeding to the singular circumstance delineated in CPL 160.50 (1) (d) (i)" (5 NY3d 204-205).[14]  The opinion's emphasis on the investigatory purpose of the law enforcement exception, coupled with the procedural posture of the People's request, informed the decision, on the question presented, that courts are not authorized "to make

---

[14] There is no restriction in the Criminal Procedure Law that forecloses continued investigation by a District Attorney once a criminal action commences.  Aside from investigatory measures necessary to address defenses raised by notice filed by a defendant after arraignment (see CPL 250.20), the continuing duty of the prosecutor to ensure the prosecution has not wrongfully accused a defendant is completely at odds with any declaration that all investigation suddenly ceases once a criminal action commences.

sealed records available to a prosecutor for purposes of making sentencing recommendations" (5 NY3d at 199). This narrow determination is consistent with the statutory intent to protect a defendant against the use of unsubstantiated allegations from a sealed record in further proceedings absent an exception in CPL 160.50.

Katherine B. is readily distinguishable, as the postverdict unsealing motion was made to place before the court unsubstantiated allegations in an action terminated in favor of the accused in connection with the People's initial sentencing recommendation (see 5 NY3d at 200). Here, by contrast, the unsealing application was singularly focused on gathering information to enable the sentencing court to determine whether defendant had in fact violated the conditions of his still-pending plea agreement by engaging in criminal activity separate from the allegations for which he was acquitted. This case implicates the court's core authority to execute the specific plea agreement binding on the parties, as well as the People's ability to demonstrate that defendant violated that agreement. In this vein, the People's investigatory role in seeking the unsealed records is akin to the investigatory function exercised by the Department of Corrections and Community Supervision and the probation department, permitted under CPL 160.50 (1) (d) (iv) and (vi), in accessing records of an action terminated in a defendant's favor. Such access was contemplated by the legislature to allow enhanced supervision, and even permits revocation "for the very act underlying the arrest which resulted in sealing" (Matter of Alonzo M. v New York City Dept. of Probation, 72 NY2d 662, 668 [1988]). To accomplish that permissible goal, an investigation of the facts is necessary.

The overarching concern in <u>Katherine B.</u> was that CPL 160.50 was used to permit the sentencing court to consider the precise factual allegations underlying the crimes of acquittal, which are generally irrelevant to the issue of punishment. By contrast, here, defendant, who was found not guilty of the robbery charges, retains the presumption of innocence on those offenses, which were not used against him in the sentencing determination (<u>compare</u> <u>United States v Watts</u>, 519 US 148, 151-152 [1997], <u>with</u> <u>Apprendi v New Jersey</u>, 530 US 466 [2000]). Unlike <u>Katherine B.</u>, the process engaged in by the sentencing court below is entirely in keeping with the protective purpose of the plain language of the statute – ensuring that an individual does not face adverse consequences based on charges that are resolved in his or her favor, while balancing the need for the court and law enforcement to access materials for determinations necessary to perform their duties and functions.[15]

IV

Even if <u>Katherine B.</u> should be broadly interpreted to prohibit a sentencing court from obtaining, on the prosecutor's motion, information relevant to an <u>Outley</u> hearing – which it should not – the sentencing court should nonetheless be permitted to exercise

---

[15] In this regard, the primary purpose of the statute – to eliminate stigma – becomes clear when CPL 160.50 is considered with CPL 160.55. CPL 160.55 (1) (c) is substantially similar to CPL 160.50 (1) (c), except that it does not specifically provide for the sealing of court records (<u>see also</u> 5 NY3d at 201 n 3). While CPL 160.50, which applies to criminal actions terminated in favor of a defendant, including actions dismissed prior to verdict, plainly was intended to provide protections "consistent with the presumption of innocence," (Governor's Approval Mem, 1976 McKinney's Session Laws of NY, at 2451), such protections would not apply to records sealed under the nearly identically worded CPL 160.55, which addresses records sealed upon *conviction* of a noncriminal offense.

its authority to determine whether a defendant, in a postplea posture, complied with his negotiated plea agreement before imposing sentence (see CPL 400.10 [4]; Outley, 80 NY2d at 712). Significantly, it is not necessary to prove that a defendant committed the postplea offense that led to the arrest in order to satisfy due process concerns under Outley (see 80 NY2d at 713). Rather, the sentencing court must conduct a hearing "of sufficient depth . . . so that the court can be satisfied – not of defendant's guilt of the new criminal charge but of the existence of a legitimate basis for the arrest on that charge" (80 NY2d at 713). The majority's contrary holding that a sentencing court cannot consider a defendant's admissions made under oath in open court in this context undermines judicial control in the sentencing process (see People v Selikoff, 35 NY2d 227 [1974]) and hinders the court in the performance of its fundamental sentencing function – "[t]o comply with due process . . . [and] assure itself that the information upon which it bases the sentence is reliable and accurate" (80 NY2d at 712).

A limited exception to allow unsealing in this situation would be consistent with our similar holdings in Matter of New York State Commn. on Jud. Conduct v Rubenstein (23 NY3d 570 [2014]) and Matter of Dondi (63 NY2d 331 [1984]). As we recognized in Rubenstein, "'a former defendant's interest in preventing the disclosure of official records and papers . . . is not absolute,'" as "'countervailing considerations'" are present in CPL 160.50's statutory exceptions (23 NY3d at 580, quoting Harper, 89 NY2d at 766-767). Moreover, despite our recognition that the statutory exemptions are meant to be narrowly construed, "[o]ur inquiry does not commence and end with CPL 160.50, for we have recognized that there may be other sources of authority permitting access to sealed records"

– in particular, where there are "extraordinary circumstances," a specific grant of authority or a legal mandate that would otherwise be impossible to accomplish (23 NY3d at 580-581). Thus, in Rubenstein, based on the broad investigatory powers accorded to the Commission on Judicial Conduct under the Judiciary Law and its constitutional duty to "ensure the integrity of the judicial system," we held that the Commission could obtain sealed documents under CPL 160.50 (23 NY3d at 581). That holding was in keeping with Matter of Dondi (63 NY2d 331 [1984]), wherein we concluded that "the Appellate Division may exercise its discretion, pursuant to inherent authority over records and its oversight and disciplinary power over attorneys and counselors at law, to permit the unsealing of criminal records," in "extraordinary circumstances" and "only upon a compelling demonstration, by affirmation, that without an unsealing of criminal records, the ends of protecting the public through investigation and possible discipline of an attorney cannot be accomplished" (63 NY2d at 338).

In the extraordinary circumstances presented by this case, the court's paramount concern – that a defendant, who receives a favorable plea deal and is released into the community based on a promise not to engage in criminal activity, is sentenced in accordance with the terms of his plea agreement – outweighs sealing protection for the very record wherein defendant openly admitted that he violated the plea condition. The majority's dismissal of this concern rests on the contention that the factual circumstances here are not "unique or exceptional" (majority op at 18), due to the common nature of the imposition of a conditional plea agreement. That premise, however, assumes a pronounced criminal propensity on the part of the average defendant who has just been convicted on a

guilty plea. It also ignores the remarkable nature of what transpired in this case – defendant's admission to postplea criminal conduct under oath in open court – as well as the indisputable fact that the sentencing court did not consider the factual allegations of the charges for which defendant was acquitted.

The statutory history of CPL 160.50, invoked by the majority, actually undermines its position. As the majority notes, CPL 160.50, as originally enacted, provided that records would not automatically be sealed where "another criminal action or proceeding is pending against [the defendant]" (L 1976, ch 877, § 1). In other words, the statute itself contemplated that the People and the court might need access to sealed records in order to pursue a pending case. While that automatic bar on sealing was later eliminated (L 1977, ch 905, § 1), the legislative history demonstrates that amendment was intended to address the difficulty courts were having – in an era where computerized criminal records were not yet common – in determining whether a defendant had an open case and because the mere existence of a pending action was deemed "irrelevant." Courts were, in an abundance of caution, refusing to seal cases, even where a defendant was entitled to the benefit of the sealing provision, simply because "there may be an action pending against the defendant" (Governor's Program Bill Mem, Bill Jacket, L 1977, ch 905). Nowhere does the legislative history indicate that the amended statute categorically bars the People from accessing sealed records for the law enforcement purpose of investigating a defendant's compliance with a court's plea conditions. The relevancy of the sealed material to the Outley hearing is more than evident and defendant's attempt to block court access to the information is

designed solely to unfairly bind the court to a promise of a lenient sentence that was violative of the plea agreement.

The majority's conclusion that the sealing provision operates to render anything that transpires between arrest and a favorable disposition a "nullity" is also seriously flawed (see majority op at 13). Although the statute provides for the sealing of records in an attempt to restore an individual to prearrest status after charges have been terminated in his or her favor, that protection is limited by the express terms of the statute, which plainly contemplate disclosure of information to the court, the District Attorney, and other law enforcement agencies where authorized by statute or the court (see CPL 160.60). The majority's seemingly endless references to what it views as the legislative intent animating the sealing statute overlook a key tenet of statutory interpretation – "courts normally accord statutes their plain meaning, but 'will not blindly apply the words of a statute to arrive at an unreasonable or absurd result'" (People v Santi, 3 NY3d 234, 242 [2004], quoting Williams v Williams, 23 NY2d 592, 599 [1969]). The words of the statute do not support the conclusion that the protections of CPL 160.50 must be mechanically applied to encompass sworn admissions to criminal conduct in open court, unrelated to the offenses of which defendant was acquitted, and to obstruct the court's obligation to impose a sentence consistent with the plea agreement.

V

Even if the unsealing of the trial transcript violated CPL 160.50, defendant is not entitled to the remedy of suppression of the sealed testimony (see People v Patterson, 78 NY2d 711 [1991]). In Patterson, CPL 160.50 was violated when the police improperly

retained the defendant's photograph, obtained in connection with a prior dismissed charge, and used the photograph, in the absence of a court order, in a photo array from which the victim identified the defendant (see 78 NY2d at 713). We observed that a defendant does not have a constitutional right to the return of arrest photographs when charges are dismissed and concluded that the legislature afforded a civil remedy for violations of CPL 160.50 – i.e., a complaint for an unlawful discriminatory practice under Executive Law § 296 or an action under 42 USC § 1983 (see 78 NY2d at 715-716). "[T]here is nothing in the history of CPL 160.50 or related statutes indicating a legislative intent to confer a constitutionally derived 'substantial right,' such that the violation of that statute, without more, would justify invocation of the exclusionary rule with respect to subsequent independent and unrelated criminal proceedings" (78 NY2d at 716). We went on to point out that "in limited circumstances . . . the violation of a statute may warrant imposing the sanction of suppression" but observed that we have only recognized such a remedy "where a constitutionally protected right was implicated" (78 NY2d at 716-717; see also People v Johnson, 27 NY3d 199, 207 [2016]; People v Greene, 9 NY3d 277, 280-281 [2007]; People v Taylor, 73 NY2d 683, 690-691 [1989]).

Conspicuously absent from the majority's unsuccessful attempt to distinguish Patterson is any effort to identify a constitutional right of defendant's that was infringed by the unsealing order in this case. The majority concludes, instead, that use of the unsealed information warrants the drastic remedy of suppression because the court's action resulted in the imposition of a harsher sentence based solely upon that unsealed testimony (see majority op at 21). Given that defendant at sentencing disputed only his motivations for,

but not the fact of, his new criminal conduct in violation of the plea conditions, the record supports no claim of an erroneous <u>Outley</u> determination. Moreover, the majority's reasoning is not supported by <u>Matter of Charles Q. v Constantine</u> (85 NY2d 571 [1995]). In that case we observed that "[h]aving concluded [in <u>Patterson</u>] that evidence obtained in violation of a CPL 160.50 sealing order need not be suppressed in a criminal proceeding, we discern no basis for excluding from a disciplinary hearing evidence obtained through an erroneous unsealing order" (85 NY2d at 575). The majority's conclusion that the "more" contemplated by <u>Patterson</u> is satisfied when the unsealing error has an effect on the proceeding turns our suppression jurisprudence on its head. In a similar vein, the majority misperceives the import of <u>Patterson</u>'s statement that the use of the photograph did not affect the determination of the defendant's guilt or innocence. This was merely another way of saying that there must be some underlying constitutional violation – not merely the use of sealed information in violation of CPL 160.50 – to warrant the remedy of suppression.

Effectively, the majority holds that the exclusionary rule should be invoked against the sentencing court – as a penalty for seeking to fulfill its function by obtaining reliable evidence prior to concluding that defendant violated his negotiated plea agreement and imposing a sentence consistent with the agreement. The exclusionary rule is meant to "'deter[] lawless conduct'" by police and to preclude the use in court of evidence that was "'unconstitutionally obtained'" (<u>Brown v Illinois</u>, 422 US 590, 599 [1975], quoting <u>Wong Sun v United States</u>, 371 US 471, 486 [1963]; <u>People v Boodle</u>, 47 NY2d 398, 404-405 [1979]). Apparently, the goal to be achieved by suppressing the testimony under the

circumstances of this case – where defendant admitted to uncharged criminal conduct in open court – is to strictly enforce the five-day rule of CPL 160.50, authorizing a court to forestall the placement of a seal on court records.  It cannot seriously be argued that this result is in keeping with the statute's purpose to protect a defendant in his future endeavors from a stigma flowing from an acquittal of different criminal activity.  Indeed, the end result here, after a remittal for a new sentencing proceeding, is likely to be the same.  The majority tacitly recognizes as much in its observation that the People are free to pursue other available means of introducing this information upon remittal (see majority op at 24), as well as its acknowledgement that the People immediately advised the court of the nature of the issue here the day after defendant's acquittal, when the People or the court sua sponte could have sought to forestall the sealing of the record in the interests of justice within the statutory five-day window (CPL 160.50 [1]; majority op at 14, 23 n 10 [mischaracterizing this motion as a motion for a "stay"]).

In sum, this case is distinguishable from Katherine B. in that the official court record was unsealed to allow the sentencing court – in the context of an Outley hearing – to access information that defendant testified in open court to a violation of his plea conditions.  The court was well within its fundamental duties to consider defendant's postplea criminal conduct in imposing a sentence consistent with the negotiated plea agreement.  We certainly should not distort a straightforward statute to erect unreasonable barriers to the court's discovery of the truth at the cost of the integrity of the criminal justice system.  CPL 160.50 does not require the absurd result countenanced by the majority's decision – a result

all the more unreasonable given that defendant did not dispute the postplea criminal conduct at sentencing. Accordingly, I would affirm the Appellate Division order.

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

Order reversed and case remitted to Supreme Court, New York County, for further proceedings in accordance with the opinion herein. Opinion by Judge Rivera. Judges Stein, Fahey and Wilson concur. Chief Judge DiFiore dissents and votes to affirm in an opinion in which Judges Garcia and Feinman concur.

Decided February 18, 2020